A03A1799. IN THE INTEREST OF P. A. T. L., a child.
(592 SE2d 536)

BARNES, Judge.

The mother of P. A. T. L., a minor child, appeals from the order of the juvenile court terminating her parental rights. She asserts that the evidence does not support the juvenile court's finding of future deprivation. After reviewing the record on appeal, we conclude that the juvenile court's order was supported by clear and convincing evidence and affirm.

On appeal from a termination order, this Court views the evidence in the light most favorable to the appellee and determines whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. *In the Interest of S. H.*, 251 Ga. App. 555 (1) (553 SE2d 849) (2001). "We do not weigh the evidence and must defer to the trial judge as the factfinder." (Citation and punctuation omitted.) *In the Interest of C. F.*, 251 Ga. App. 708 (555 SE2d 81) (2001).

Viewed in that light, the evidence shows that the child was born on May 4, 1995, while the mother was incarcerated for forgery, and she arranged for a relative to keep the baby. On August 1, 1995, when the child was about three months old, the relative turned the child over to the Department of Family and Children Services (DFACS) because she could no longer care for him. On August 7, 1995, upon DFACS's petition, the child was found deprived and placed in foster care. DFACS developed a reunification case plan requiring the mother to maintain contact with the caseworker and the child. During the periodic case plan reviews, caseworkers noted that the mother had fulfilled the reunification goals and was cooperative, and upon the mother's release from prison, the child was returned to his mother's custody on January 30, 1997.

On January 5, 1998, the child was returned to DFACS custody after the mother contacted the former foster parent and asked her to keep the child for six months because the mother was homeless and her car was going to be repossessed. On February 4, 1998, the juvenile court found the child deprived, and another reunification plan was approved which required the mother to, among other things, cooperate and maintain contact with DFACS, find housing, remain drug and alcohol free, demonstrate that she could support the child, and pay child support of $50 a month. In June 1998, the mother was convicted and incarcerated for shoplifting, and in a July 1998 case review, DFACS noted that the mother had not contacted the agency since February 1998. In December 1998, DFACS petitioned to terminate the mother's parental rights, which, following a hearing, the juvenile court denied, although it extended DFACS custody. In its order, the court noted that the "mother has complied minimally with

her case plan, but this is hindered due to her incarceration." The juvenile court extended custody for an additional year, then extended it several more times. On April 4, 2002, DFACS filed another petition for termination, which was granted following a hearing.

At the hearing, the DFACS caseworker testified that since his removal in 1998, the child had "been in DFACS custody consecutively now for over four and a half years." She said that the mother had not complied with the reunification case plan. She testified that the mother was to cooperate and maintain contact with the department, but "we lost contact with [the mother] on — July of 2001 was her last contact with the agency. So in this past year, she has not maintained contact with the agency." The caseworker said that in January 2002, she discovered the mother was in jail, and she visited the mother in jail in March 2002, which was her first contact with the mother since July 2001. She said that, although the mother was required to attend panel reviews and scheduled conferences, she did not attend a panel review on July 12, 2001. The caseworker did note that even though the mother was incarcerated at the time of the other panel reviews, she had appealed the reviews and attended the court hearings on the reviews. Although the plan required the mother to obtain housing by applying for public housing, the caseworker testified that the "mother has never had a steady, stable residence and has lived from relative to relative upon her release from jail."

The mother also did not obtain a drug and alcohol assessment and follow its recommendations. The caseworker testified that the mother did obtain the drug screens required by DFACS and that they were all negative. She also testified that the mother never demonstrated that she would be able to support the child, and did not pay the required $50 child support payment. The caseworker noted that the mother had last visited her child on July 6, 2001, even though her last arrest did not occur until October 1, 2001. She testified that the child is in an adoptive placement and has been with the same foster family for four of his seven years. She also testified that the child did not have a mother-son bond with his mother and there did not appear to be a loving relationship between the two.

1. In order to terminate parental rights, a juvenile court must determine (1) that there is present clear and convincing evidence of parental misconduct or inability; and (2) that termination of parental rights is in the best interest of the child, considering the physical, mental, emotional, and moral condition and needs of the child. OCGA § 15-11-94 (a). A determination of parental misconduct or inability requires findings that (1) the child is deprived; (2) the deprivation is caused by lack of proper parental care or control; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation will likely cause serious physical, mental, emotional, or moral harm to

the child. OCGA § 15-11-94 (b) (4) (A). *In the Interest of C. N. S.*, 248 Ga. App. 84, 85 (545 SE2d 633) (2001). Because the deprivation order was not appealed, the mother was bound by the deprivation finding for purposes of the termination hearing. See *In the Interest of R. G.*, 249 Ga. App. 91, 93 (1) (a) (547 SE2d 729) (2001).

The mother disputes only the trial court's conclusions as to the third and fourth factors indicating parental misconduct. She argues that it was not established by clear and convincing evidence that the cause of the deprivation was likely to continue, and also that DFACS failed to present any evidence that the deprivation would "seriously harm" the child.

P. A. T. L. was found to be deprived because of the mother's homelessness, unemployment, continued incarceration, and failure to complete her case plan. At the time of the termination hearing, the mother was incarcerated serving five years of a ten-year sentence for theft by shoplifting. Before that, in June 1998, she was sentenced to seven years for another shoplifting conviction. In all, the mother has been incarcerated for more than five years of the seven-year-old child's life. She has seventeen arrests, including her last conviction, for which she must serve potentially four more years.

OCGA § 15-11-94 (b) (4) (B) (iii) provides that the court shall consider the "[c]onviction of the parent of a felony and imprisonment therefor which has a demonstrable negative effect on the quality of the parent-child relationship." "Although incarceration alone need not always compel the termination of parental rights, it can support such a ruling when sufficient aggravating circumstances are present." *In the Interest of B. A. S.*, 254 Ga. App. 430, 435 (3) (563 SE2d 141) (2002). These aggravating circumstances may include, in addition to a history of incarcerations for repeated offenses, "whether the incarcerated parent has made an effort to communicate with the child and, despite imprisonment, maintain a parental bond in a meaningful, supportive[,] and parental manner." (Punctuation and footnote omitted.) *Stills v. Johnson*, 272 Ga. 645, 651 (3) (533 SE2d 695) (2000). While there is evidence that the mother maintained visitation with her son during parts of her incarceration, the caseworker testified that there did not appear to be a loving bond between them. Further, there is no evidence that the mother has attempted to support her son, even during the times she was not incarcerated.

While there is some evidence that the mother worked for several months in late 2000 and early 2001 at a local supermarket, the only confirmation provided to DFACS was two paycheck stubs. There is no evidence that any money the mother earned was used to support her child. The failure to comply with goals in the reunification case plan is also considered to be such an aggravating factor in these circumstances. *In the Interest of K. B.*, 252 Ga. App. 808, 809-810 (556 SE2d

922) (2001); see *In the Interest of A. T. H.*, 248 Ga. App. 570, 572-573 (1) (547 SE2d 299) (2001) (aggravating circumstances found where a parent has not visited regularly with the child or established a parental bond and has no present prospects for employment as required by case plan).

A "criminal conviction, [along with] near continuous incarceration during the child's life, and [the] failure to comply with reunification case plans both before and during [her] incarceration provided ample grounds for [the] termination of [her] parental rights." *In the Interest of A. R. G. B.*, 251 Ga. App. 673, 674 (4) (555 SE2d 42) (2001). Thus, based on the mother's past conduct, present incarceration, lack of parental bond, and failure to support her son, the evidence supports the finding by the juvenile court judge that the deprivation is likely to continue.

We also find clear and convincing evidence that the child is likely to be seriously harmed by the continued deprivation.

> The same circumstances that authorized the juvenile court's determination that [this child was] deprived due to lack of proper parental control or to parental inability and that such deprivation was likely to continue . . . provided clear and convincing evidentiary support for the conclusion that such continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the [child].

(Citations omitted.) *In the Interest of K. S. W.*, 233 Ga. App. 144, 149 (3) (503 SE2d 376) (1998).

2. Additionally, there was clear and convincing evidence that termination of the mother's parental rights is in the best interest of the child. "The same factors that show parental misconduct or inability can support a juvenile court's finding that termination of parental rights is in the child's best interest." (Footnote omitted.) *In the Interest of V. M. T.*, 243 Ga. App. 732, 736-737 (3) (534 SE2d 452) (2000). Additionally, "the juvenile court may further consider [a child's] need for stability and the harmful effects of extended foster care." (Citation omitted.) *In the Interest of C. N. S.*, supra, 248 Ga. App. at 87.

The caseworker testified that the child is doing well in foster care; he has been with the same family for over four years; he has bonded with his foster parents; and the foster parents have expressed an interest in adopting him. Accordingly, we conclude that clear and convincing evidence presented supports the juvenile court's finding that termination of parental rights was in the best interest of the child.

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED DECEMBER 22, 2003.

*Faye E. Hays*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Assistant Attorney General, Crumbley & Crumbley, Jason T. Harper*, for appellee.