A04A0787. IN THE INTEREST OF J. D. A., a child.
(598 SE2d 842)

BLACKBURN, Presiding Judge.

Following the trial court's termination of their parental rights, the parents of J. D. A. appeal, contending that, (1) evidence was insufficient to support the termination, and (2) the petition for termination of parental rights and summons did not fulfill the requirements of OCGA § 15-11-96. For the reasons set forth below, we affirm.

Before addressing the merits of the parents' appeal, we must address a jurisdictional issue raised by the Department of Family and Children Services ("DFACS"). DFACS contends that because the parents' notices of appeal were filed prior to the date of the juvenile court's order which terminated their parental rights, those notices of appeal were ineffective. DFACS further contends that since the parents did not refile a notice of appeal within 30 days after the entry of the juvenile court's order, this appeal must be dismissed for lack of jurisdiction.

Premature filing of a notice of appeal does not require dismissal of the appeal. *Gillen v. Bostick;*[1] *Elwell v. Nesmith.*[2] Instead, a prematurely filed notice of appeal is treated as effective upon the filing of the order or judgment appealed. *Livingston v. State.*[3] The parents' notices of appeal became effective on October 15, 2003, the date the juvenile court's order terminating their parental rights was

---

[11] *Thompson v. State,* 262 Ga. App. 17, 21 (6) (585 SE2d 125) (2003).
[1] *Gillen v. Bostick,* 234 Ga. 308 (215 SE2d 676) (1975).
[2] *Elwell v. Nesmith,* 246 Ga. 430, 431 (1) (271 SE2d 827) (1980).
[3] *Livingston v. State,* 221 Ga. App. 563 (1) (472 SE2d 317) (1996).

entered. Their notices of appeal were, thus, timely; and DFACS's contention that this Court does not have jurisdiction over this appeal must be rejected.

1. The parents contend that the evidence was insufficient to support the termination of their parental rights. We disagree.

> The standard of review on appeal from a termination of parental rights is whether, after reviewing the evidence in the light most favorable to the (trial) court's disposition, any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. On appeal, this Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the (trial) court's factfinding and affirm unless the appellate standard is not met.

*Brogdon v. Brogdon.*[4]

Viewed in this light, the evidence shows that on the night of February 4, 2002, when J. D. A. was eight months old, his mother noticed that his right arm was swollen. The next day, his mother also noticed that J. D. A. had swelling on his scalp and took him to the hospital. The doctors at the hospital determined that J. D. A. had a fractured skull and fractures in two bones of his right forearm. Due to the suspicious nature of the fractures, the doctors performed a skeletal survey, taking x-rays of all of the bones of J. D. A.'s body. The skeletal survey revealed that J. D. A. had fractures on six or seven of his ribs. The fractures of J. D. A.'s ribs were partially healed, meaning that the rib fractures had occurred at least ten days and at most four months previously. As the fractures of J. D. A.'s skull and arm did not exhibit any signs of healing, these fractures occurred more recently than the fractures of J. D. A.'s ribs. J. D. A.'s mother could not offer any explanation as to how he had sustained the multiple broken bones observed by the doctors. The hospital reported J. D. A.'s condition to the police, who removed J. D. A. from his parents' custody.

DFACS was given temporary custody of J. D. A. by order of the Juvenile Court of Fulton County dated February 7, 2002. DFACS filed a deprivation petition on February 11, 2002. Following a hearing, the juvenile court, by order entered March 19, 2002, found J. D. A. was deprived because he was without "proper parental care and supervision." This order was not appealed.

---

[4] *Brogdon v. Brogdon*, 265 Ga. App. 102 (592 SE2d 884) (2004).

DFACS pursued a case plan which required J. D. A.'s parents to complete parenting skills and anger management classes, participate in counseling, and undergo psychological evaluations. J. D. A.'s parents fulfilled each of these requirements. The psychologist who performed the evaluations of J. D. A.'s parents recommended that they attend more extensive counseling. The parents did not attend the recommended counseling.

DFACS filed a petition for termination of parental rights on April 4, 2003. Both of J. D. A.'s parents testified at a July 2, 2003, juvenile court hearing on the petition that they did not know how J. D. A. had sustained his injuries and that they would not do anything differently if J. D. A. was returned to their custody. By order entered October 15, 2003, the juvenile court terminated the parental rights of J. D. A.'s parents. The parents filed their notices of appeal on July 28 and July 30, 2003.

> A termination of parental rights case involves a two-step analysis. First, there must be a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors exist, then the court must determine whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home.

(Footnote omitted.) *In the Interest of V. M. T.*[5]

A court finds parental misconduct or inability by examining the four factors contained in OCGA § 15-11-94 (b) (4) (A). The parents concede that they are bound by the juvenile court's unappealed order finding that J. D. A. was deprived. See *In the Interest of V. M. T.*, supra (unappealed deprivation order sufficient to establish child was deprived within the meaning of OCGA § 15-11-94 (b) (4) (A) (i)). The parents also make no argument concerning the causation requirement of the statute.[6]

The parents do contend, however, that there was not sufficient evidence to show that the cause of the deprivation is likely to continue. The parents argue that evidence of past unfitness, standing

---

[5] *In the Interest of V. M. T.*, 243 Ga. App. 732, 735-736 (3) (534 SE2d 452) (2000).
[6] OCGA § 15-11-94 (b) (4) (A) (ii).

alone, is insufficient to show present unfitness. The parents cite their completion of the parenting and anger management classes as well as the other items contained in their case plan as evidence that the cause of J. D. A.'s deprivation is not likely to continue.

"[A]lthough evidence of past unfitness, standing alone, is insufficient to terminate the rights of a parent in his or her natural child, a court properly considers the past conduct of the parents in determining whether the cause of deprivation is likely to continue." (Footnote omitted.) *Brogdon*, supra at 107 (2). J. D. A. suffered multiple broken bones in at least two separate incidents. The parents have never offered any explanation of how J. D. A.'s injuries occurred. Even if neither parent inflicted J. D. A.'s injuries, the juvenile court was authorized to conclude that his injuries were attributable to the parents' inability to protect their child, which also constitutes lack of proper parental care and control. *In the Interest of V. M. T.*, supra at 736. The parents "have never identified the source of the problem; therefore, the abuse is unremedied, and the home situation remains the same as when the baby suffered the broken bones." *In the Interest of J. V.*[7] Moreover, both parents testified that they would not do anything differently if J. D. A. were returned to their care. There was sufficient evidence to show that the cause of the deprivation is likely to continue.

The parents further contend that continued deprivation was not likely to cause serious physical, mental, emotional, or moral harm to J. D. A. We reject this contention.

> The same circumstances that authorized the juvenile court's determination that [the child was] deprived due to lack of proper parental control or to parental inability and that such deprivation was likely to continue further provided clear and convincing evidentiary support for the conclusion that such continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the [child].

*In the Interest of N. L.*[8] J. D. A. has already suffered at least nine broken bones in at least two separate incidents while in his parents' care. This was sufficient evidence for the juvenile court to conclude that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to J. D. A.

---

[7] *In the Interest of J. V.*, 241 Ga. App. 621, 628 (1) (526 SE2d 386) (1999).

[8] *In the Interest of N. L.*, 260 Ga. App. 830, 835 (581 SE2d 643) (2003).

2. The parents contend that the petition for termination of parental rights and summons did not fulfill the requirements of OCGA § 15-11-96. The parents argue that there was no evidence presented in the court below to show that the petition for termination of parental rights and summons was served on J. D. A.'s guardian or foster parents as required by OCGA § 15-11-96 (a). The parents also argue that DFACS failed to comply with the requirement to have the child present at the termination hearing established by OCGA § 15-11-96 (c).

These contentions fail, however, because the parents did not raise them in the juvenile court. "[I]ssues not raised in the court below cannot be raised in this court for the first time." *In re S. D. S.*[9] See also *In the Interest of S. J. M.*[10] (issue of service waived when not raised at time of termination hearing).

*Judgment affirmed. Barnes and Mikell, JJ., concur.*

DECIDED APRIL 14, 2004.

*Ebun A. Aforo, Francis O. Kadiri,* for appellant.
*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Assistant Attorney General, John C. Shelton,* for appellee.

[9] *In re S. D. S.*, 166 Ga. App. 344, 345 (2) (304 SE2d 85) (1983).
[10] *In the Interest of S. J. M.*, 225 Ga. App. 703, 705 (484 SE2d 764) (1997).