A04A0959. IN THE INTEREST OF M. D. F., a child.

(606 SE2d 658)

MIKELL, Judge.

The natural mother of M. D. F., a female child born on June 28, 1994, brought a verified petition under OCGA § 15-11-94 for the termination of the parental rights of M. D. F.'s biological father. In an amended order, the juvenile court granted the petition.[1] The father appeals, arguing that the juvenile court erred in finding clear and convincing evidence that his parental rights have been lost. We disagree and affirm.

> The decision to terminate parental rights involves a two-step inquiry. First, the court must determine whether there is present clear and convincing evidence of parental misconduct or inability. Parental misconduct or inability exists if (1) the child is deprived; (2) the deprivation is caused by the parent's lack of proper parental care or control; (3) the cause of the deprivation is likely to continue or will not likely be remedied; and (4) the continued deprivation will likely cause serious physical, mental, emotional, or moral harm to the child. Second, if the court finds clear and convincing evidence of present parental misconduct or inability, then the court must consider whether termination of parental rights is in the best interest of the child.[2]

In a case such as this, where the child has not been in the father's custody, the juvenile court also is required to consider whether the father failed significantly, for at least one year before the petition was filed, to maintain a meaningful, supportive parental bond with the

---

[1] This is the second appearance of this case before this Court. In *In the Interest of M. D. F.,* 263 Ga. App. 50 (587 SE2d 199) (2003), we reversed and remanded the case back to the juvenile court because the original termination order was silent as to the likelihood that the continued deprivation will cause or is likely to cause serious physical, mental, emotional or moral harm to the child. Id. at 52.

[2] (Footnote omitted.) *In the Interest of P. O. M.,* 255 Ga. App. 534 (566 SE2d 334) (2002).

child, to support the child financially, or to comply with the court-ordered reunification plan.[3]

> The standard of review on appeal from a termination of parental rights is whether, after reviewing the evidence in the light most favorable to the [juvenile] court's disposition, any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. On appeal this [c]ourt neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the [juvenile] court's factfinding and affirm unless the appellate standard is not met.[4]

Viewed in this light, the evidence shows that appellant and appellee were divorced in 1995, having lived together as man and wife in a common law marriage. Appellee received sole custody of M. D. F., the couple's only child. Soon after the divorce, appellant pled guilty to numerous charges including reckless driving, fleeing and attempting to elude a police officer, operating a vehicle with a suspended license, misdemeanor obstruction of an officer, misdemeanor theft by conversion, and misdemeanor theft by taking. He was incarcerated from 1996 until 2000. Subsequent to his release, appellant was charged with and pled guilty to stalking appellee.

At the time of the hearing, appellant was incarcerated for single misdemeanor counts of invasion of privacy, simple battery, obstruction of a law enforcement officer, theft by taking and terroristic threats, as well as two felony counts of robbery and aggravated stalking. Nonetheless, appellant appeared in the juvenile court and contested the termination petition. Also present at the hearing were appellee, the child's guardian ad litem,[5] appellant's mother, several police officers familiar with appellant's criminal charges, two of appellant's ex-girlfriends and several others who witnessed appellant's alleged violent behavior.

Appellant testified that he began abusing drugs and alcohol in 1993, shortly after the death of his first child with appellee. He denied ever physically abusing appellee or M. D. F. He testified that during his incarceration, he sent letters and cards to M. D. F., which were

---

[3] OCGA § 15-11-94 (b) (4) (C) (i)-(iii).

[4] (Footnote omitted.) *Brogdon v. Brogdon*, 265 Ga. App. 102 (592 SE2d 884) (2004). See also *In the Interest of P. A. T. L.*, 264 Ga. App. 901 (592 SE2d 536) (2003) (" '[w]e do not weigh the evidence and must defer to the trial judge as the factfinder' ") (citation omitted).

[5] Even though the guardian ad litem was present during the hearing and examined witnesses, there is no evidence in the record that he made any recommendation to the juvenile court.

returned to him stamped "return to sender." While in prison, appellant filed a tax return so that M. D. F. could get the refund. Upon appellant's release from prison in 2000, he and his father met M. D. F. and her mother at a local restaurant where appellee agreed that appellant could visit with M. D. F. on weekends. Appellant testified that appellee allowed him to visit M. D. F. for eight months, but ended those visits after appellant, appellee and appellee's husband had an argument. Appellant also testified that when he brought Christmas gifts to M. D. F. and wanted to stay and watch her open them, appellee told him to leave the gifts in the road. Appellant now sees a prison therapist and is involved in a prison-sponsored anger management class and substance abuse class. He expects to be released on September 22, 2004, but has a pending drug charge in Rockdale County. Appellant stated that he loves his daughter and that he believes appellee and her husband have "poisoned" M. D. F.'s mind by telling her bad things about him. Appellant testified that he has neither used drugs in front of M. D. F. nor been "high" around her. Finally, appellant testified that when he is emotionally upset he tends to engage in self-destructive behavior.

Appellant owes over $27,000 in child support; he paid $50 in 2000. Appellee testified that shortly before the hearing she received approximately $1,200 from Child Support Recovery. She testified that appellant has not visited M. D. F. in the last year and that appellant has failed to meet any of the requirements previously imposed by the court in order to have visitation. Appellee acknowledged recently receiving a letter from appellant to M. D. F., but did not show it to M. D. F. because she was visiting her paternal grandparents. Appellee acknowledged that she refused to comply with appellant's "terms" for delivering M. D. F.'s Christmas presents. Appellee testified that she believes that appellant's behavior "has caused serious physical, mental, emotional, and moral harm to [M. D. F. and that] . . . the deprivation . . . is likely to continue for some time in the future." Appellee testified that appellant stalked her when he used her Blockbuster card to rent a video titled "Dick." Appellee believes that once appellant is released from jail he will continue to stalk and harass her. Appellee also believes that appellant is a physical danger and that he may hurt or kill her or her children. She is also afraid that appellant may kidnap her children. Appellee testified that M. D. F. recently sought treatment from a local therapist and that she has seen the therapist several times. Appellee has never asked the therapist for a diagnosis, but the therapist has told appellee that M. D. F. is doing better. Appellee further stated that they "all are doing better when [appellant is] incarcerated." Appellee took M. D. F. to the therapist after M. D. F. complained of seeing a "vision" where appellant was "following [appellee] in the car and he made [appellee's] car

wreck and [appellant] pulled [appellee] out of the car and he was trying to kill [her]." Appellee stated that M. D. F. has seen appellant act violently and has also seen appellee upset as a result of appellant's violent behavior. Appellee attempted to take out two warrants against appellant for child abandonment. Appellee denied receiving and/or refusing letters from appellant addressed to M. D. F. Appellee also testified that her husband would like to adopt M. D. F.

According to Carrie Ireland, appellant's former girlfriend, appellant told Ireland that "if [appellee] would not let [appellant] see [M. D. F.], he would not pay [child support]." Ireland also testified that appellant told her that "[appellee] was refusing to let [appellant] see [M. D. F.]"

Angela Owens, another former girlfriend, testified that appellant acted violently toward her and that she took out a temporary restraining order against him but then asked to rescind the order. Owens explained that, "[w]hen I say violence, it was more just anger." Owens and another witness also described an incident when appellant came looking for Owens at a friend's house, banged on the door, screamed for Owens and then kicked Owens's car when he was told to leave. Owens testified that she never observed appellant act violently toward M. D. F.

On September 18, 2002, the juvenile court entered an order terminating appellant's parental rights and appellant appealed. As noted previously, this Court reversed and remanded, finding that the juvenile court had failed to make the required finding of continued deprivation. On December 3, 2003, the juvenile court entered a more detailed, amended order terminating appellant's parental rights. The court based its ruling on the following factors: (1) appellant's failure to comply with court orders to advance his visitation and reunion with M. D. F.; (2) appellant's complete failure to develop and maintain a continuing parental bond with the child; (3) the fact that appellant has engaged in recurring illegal activity, is presently incarcerated and has a pending charge in Rockdale County; (4) appellant's history of chronic unrehabilitated drug abuse; (5) the fact that appellant has acted in a violent, vulgar and threatening manner in the presence of the child; and (6) appellant's failure to pay child support.

In two related enumerations of error, appellant argues that the juvenile court erred in finding clear and convincing evidence (a) that he is the cause of M. D. F.'s deprivation and (b) that the continued deprivation is causing or is likely to cause serious physical, mental, emotional or moral harm to the child. We disagree and conclude that a rational trier of fact could have found by clear and convincing evidence that appellant was the cause of M. D. F.'s deprivation and

that the continued deprivation is causing or is likely to cause serious physical, mental, emotional or moral harm to the child.

OCGA § 15-11-94 (a) sets out a two-part procedure for termination cases. First, the juvenile court must determine whether there is clear and convincing evidence of parental misconduct or inability, as defined in subsection (b) of the statute. Parental misconduct is found when: (1) the child is deprived; (2) lack of proper parental care or control is causing the deprivation; (3) the cause of the deprivation is likely to continue or will not likely be remedied; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child.[6] Second, if the juvenile court finds clear and convincing evidence of parental misconduct or inability, "[it] shall then consider whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child . . . , including the need for a secure and stable home."[7] Appellant disputes only the juvenile court's findings as to the third and fourth factors of OCGA § 15-11-94 (b) (4) (A).

Appellant's contention that clear and convincing evidence does not support the juvenile court's finding that he was the cause of M. D. F.'s deprivation is meritless. The evidence shows that appellant has been incarcerated for most of M. D. F.'s life. Though appellant was expected to be released in September 2004, he has a drug charge pending in Rockdale County. He is $27,000 in arrears for child support payments. He admits to years of alcohol and drug abuse, but did not seek professional treatment until he was incarcerated, and he admits to engaging in self-destructive and violent behavior. Further, appellee testified that M. D. F. has witnessed appellant's violent outbursts and that she had to take M. D. F. to a therapist after the child complained of seeing a "vision" where appellant was "following [appellee] in the car and he made [appellee's] car wreck and [appellant] pulled [appellee] out of the car and he was trying to kill [her]." Under these circumstances, the juvenile court did not err in finding that appellant is the cause of M. D. F.'s deprivation.

Next, the juvenile court properly found that the evidence satisfies the third factor, which is whether the child's deprivation is likely to continue. It is well settled that courts may consider the past conduct of a parent in determining whether the deprivation is likely to continue.[8] Further, pursuant to OCGA § 15-11-94 (b) (4) (B) (iii),

---

[6] OCGA § 15-11-94 (b) (4) (A) (i)-(iv).

[7] OCGA § 15-11-94 (a).

[8] See *In the Interest of J. D. A.*, 267 Ga. App. 103, 106 (1) (598 SE2d 842) (2004); *In the Interest of T. D. B.*, 266 Ga. App. 434, 439 (1) (a) (597 SE2d 537) (2004); *Brogdon*, supra at 107 (2).

the juvenile court shall consider the "[c]onviction of the parent of a felony and imprisonment therefor which has a demonstrable negative effect on the quality of the parent-child relationship." "Although incarceration alone need not always compel the termination of parental rights, it can support such a ruling when sufficient aggravating circumstances are present."[9] A history of incarcerations for repeated offenses constitutes an "aggravating circumstance" that may be considered in support of the termination of parental rights.[10]

The record demonstrates that appellant has a history of violence; that the child is afraid of him and has had dreams about him killing her mother; that the child had to undergo psychological treatment as a result of appellant's behavior; and that appellant has failed to provide the child with financial support.[11] These factors, coupled with appellant's admitted history of substance abuse, repeated criminal convictions and incarcerations, and a pending drug charge, supports the juvenile court's finding that the deprivation is likely to continue.

Additionally, clear and convincing evidence supports the juvenile court's finding that the child is likely to suffer serious harm if the deprivation were to continue. With respect to this requirement, the juvenile court made the following findings:

> This [c]ourt finds that [appellant] has gone to the home of the child on numerous occasions and in the presence of the child has acted in a violent, vulgar, threatening and harassing manner. [Appellant] has threatened to harm [appellee's] entire family including the child at issue. The child has reported a "vision" in which [appellant] tried to kill [appellee]. This [c]ourt finds that the child's physical, mental and emotional health has been damaged directly by [appellant's] behavior to the point where the child has had to have psychological therapy. The violent turmoil has occurred over such a long period of time that there is no reason to believe it will not continue. The emotional and mental health damage done to the child will certainly continue.

The same evidence establishing that M. D. F.'s deprivation is likely to continue also supports a finding that continued deprivation would

---

[9] (Citation and punctuation omitted.) *P. A. T. L.*, supra at 903 (1).

[10] See *In the Interest of D. T.*, 251 Ga. App. 839, 845 (3) (555 SE2d 215) (2001).

[11] Appellant contends that the juvenile court erred in finding that he failed to provide financial support for M. D. F. He argues that the record indicates that he paid $500 on May 21, 2001, and that he was current on payments as required by the consent order for payment of child support entered August 15, 2000. This argument wholly ignores the fact that appellant stipulated to being $27,000 in arrears in child support payments.

cause serious physical, mental, or moral harm to the child.[12] Thus, the fourth factor was satisfied.

Finally, there was clear and convincing evidence that termination of appellant's parental rights is in the best interest of the child. "The same factors that show parental misconduct or inability can support a juvenile court's finding that termination of parental rights is in the child's best interest."[13] Further, appellee testified that M. D. F. "[does] better when [appellant is] incarcerated"; that the child experienced an emotional "roller coaster" ride when appellant would go weeks without contacting her and then would constantly badger appellee and M. D. F.; and that M. D. F. loves appellee's husband, who wants to adopt M. D. F. Accordingly, we conclude that clear and convincing evidence supports the juvenile court's finding that termination of appellant's parental rights was in the best interest of the child.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 16, 2004.

*Paul M. Ledbetter, Jr.*, for appellant.
*Mumford & Myers, Robert F. Mumford*, for appellee.

[12] See *P. A. T. L.*, supra at 904 (1).
[13] (Citation and punctuation omitted.) Id. at 904 (2).