611 S.E.2d 86 (2005)
271 Ga. App. 776
In the Interest of S.G., a child.
No. A05A0212.
Court of Appeals of Georgia.
February 24, 2005.
*87 Hurl R. Taylor, Jr., Ellenwood, for Appellant.
Thurbert E. Baker, Atty. Gen., Shalen S. Nelson, Sr. Asst. Atty. Gen., Mark J. Cicero, Asst. Atty. Gen., Robert Nardone, for Appellee.
ANDREWS, Presiding Judge.
The biological mother of S.G., a child, appeals from the order of the Juvenile Court of DeKalb County terminating her parental rights to the child. The appellant claims that there was a lack of clear and convincing evidence to support the juvenile court's order terminating her parental rights. For the following reasons, we find the evidence was sufficient and affirm.
The juvenile court's decision to terminate appellant's parental rights involved a two-step proceeding. In the first step, the court was required to determine pursuant to OCGA § 15-11-94(a) "whether there is present clear and convincing evidence of parental misconduct or inability...." Under OCGA § 15-11-94(b)(4)(A),
The court determines parental misconduct or inability by finding that: (i) The child is a deprived child, as such term is defined in Code Section 15-11-2; (ii) The lack of proper parental care or control by the parent in question is the cause of the child's status as deprived; (iii) Such cause of deprivation is likely to continue or will not likely be remedied; and (iv) The continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.
Pursuant to OCGA § 15-11-2(8), a deprived child is defined as a child who:
(A) Is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals; (B) Has been placed for care or adoption in violation of law; (C) Has been abandoned by his or her parents or other legal custodian; or (D) Is without a parent, guardian, or custodian.
In determining whether the child was without proper parental care or control as set forth in OCGA § 15-11-94(b)(4)(A), the court was required to consider any evidence that such care and control was absent, including evidence of the statutory circumstances described in OCGA § 15-11-94(b)(4)(B) and (C). In the present case, the court considered whether there was evidence sufficient to find the existence of the following statutory circumstances:
[Whether there exists] [a] medically verifiable deficiency of the parent's physical, mental, or emotional health of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child[.]
OCGA § 15-11-94(b)(4)(B)(i) and
[W]here the child is not in the custody of the parent who is the subject of the proceedings,... the court shall consider ... whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights: (i) To develop and maintain a parental bond with the child in a meaningful, supportive manner; (ii) To provide for the care and support of the child as required by law or judicial decree; and (iii) To comply with a court ordered plan designed to reunite the child with the parent or parents.
*88 OCGA § 15-11-94(b)(4)(C). In the second step, because the court found clear and convincing evidence of appellant's parental misconduct or inability as defined in OCGA § 15-11-94(b)(4), the court then considered
whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home.
OCGA § 15-11-94(a).
On appeal from a termination of parental rights, the standard of review is whether, after reviewing the evidence in the light most favorable to the juvenile court's disposition, any rational trier of fact could have found by clear and convincing evidence that the parent's right to custody should be terminated. In the Interest of K.S.W., 233 Ga.App. 144, 147, 503 S.E.2d 376 (1998). This Court does not weigh the evidence or determine the credibility of witnesses; rather we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met. Id.
Applying the above provisions and standards of review to appellant's claim of error, we find that there was clear and convincing evidence supporting the juvenile court's decision to terminate appellant's parental rights to the child. The following facts supported the juvenile court's termination order.
After DeKalb County police found appellant and her four-year-old child, S.G., in a homeless condition in September 2000, the child was placed in the custody of the DeKalb County Department of Family and Children Services (DFACS). Pursuant to a DFACS petition, the juvenile court entered an order in January 2001 finding that the child was deprived and continuing custody of the child in DFACS. At the deprivation hearing, the appellant stipulated that the child was deprived because the appellant was homeless and unable to provide for the child.[1] A court-ordered psychological evaluation of appellant performed in January 2001 diagnosed appellant as suffering from schizophrenia and anxiety disorder, and found that she was not presently capable of caring for the child. Pursuant to OCGA § 15-11-58, a plan for appellant to obtain treatment and eventually reunite with the child was formed and adopted by the court in March 2001. In April 2001, appellant filed a request for a hearing on her case contending that she was capable of caring for the child. The court scheduled a hearing in May 2001, but appellant failed to appear for the scheduled hearing. In May 2001, the court adopted a revised plan for reunification of the appellant and the child, even though the record shows that appellant's whereabouts were unknown at the time, and she had not seen or attempted to contact the child since late March 2001. In August 2001, DFACS filed a motion noting that the appellant's whereabouts were still unknown; seeking to retain temporary custody of the child; and submitting a revised plan to terminate parental rights and place the child for adoption. In September 2001, the court continued custody in DFACS; adopted the revised plan; and extended the deprivation order noting that the appellant's whereabouts were unknown and she had not completed court-ordered goals.
In October 2001, the Georgia Department of Human Resources, acting through DFACS, petitioned the court to terminate the appellant's parental rights. After the termination petition was filed, appellant contacted the juvenile court in January 2002 by a letter which provided a Cochran, Georgia, address and a telephone number, but attempts to locate and serve the appellant at the provided address and phone number were unsuccessful, and appellant was eventually served by publication with the termination petition. The record shows that, after last visiting the child on March 28, 2001, appellant left DeKalb County in May 2001 without informing DFACS or the court of her whereabouts, and did not return until *89 over a year later after which she next visited the child on May 13, 2002. Shortly after her return, appellant was involuntarily committed to a hospital for about a week in June 2002 after she was found wandering the street disoriented and hallucinating. The hospital records showed that appellant was diagnosed as suffering symptoms of schizophrenia as a result of not taking her prescribed medication. After receiving therapy and medication, appellant was discharged to a crisis group home. In September 2002, appellant appeared at a hearing pursuant to which the court again extended the deprivation order finding that appellant had not achieved court-ordered goals. The court also reaffirmed the DFACS plan for termination of parental rights and adoption, and appellant was personally served with the termination petition.
After a hearing on the termination petition, the juvenile court entered an order on October 23, 2002, terminating appellant's parental rights in the child. But the court subsequently set aside the termination of appellant's rights and granted her motion for a new hearing on the termination petition to consider attempts to control her mental condition with medication and to stabilize her life. Thereafter, appellant submitted to another psychological evaluation in February 2003. During the subsequent hearing on the termination petition in March 2003, the licensed clinical psychologist who evaluated appellant in February 2003 testified that appellant continued to suffer from chronic mental problems stemming from paranoid schizophrenia, which appellant did not recognize as a mental illness. She testified that, although appellant was on medication at the time of the evaluation and was not suffering from overt psychotic symptoms, she did not show an appreciation for the need to remain on medication to control her mental illness, and she still exhibited a high level of paranoia and extreme levels of defensiveness and stress. The psychologist testified that, as a result of appellant's chronic mental problems, it was her opinion that, even with medication and therapy, appellant was struggling to take care of herself and was not capable of caring for a child. The court also heard testimony at the hearing from DFACS employees describing appellant's failure to maintain contact with DFACS or visit with the child from March 2001 until May 2002, and her failure to achieve court-ordered goals designed to reunite her with the child.
After considering all the evidence in the record, the juvenile court entered an order on March 26, 2003, terminating appellant's parental rights in the child. Appellant does not contest the court's finding that the child was deprived as defined in OCGA § 15-11-2(8). The court pointed to evidence, including the appellant's mental evaluations and her involuntary hospitalization, which showed that appellant was diagnosed as suffering from a medically verifiable mental deficiency, schizophrenia, of such severity and duration that it rendered her unable to adequately care for the child. OCGA § 15-11-94(b)(4)(B)(i). "A mental disability that renders a parent incapable of caring for the child is a valid legal basis for termination." (Citation and punctuation omitted). In the Interest of L.H., 236 Ga.App. 132, 135, 511 S.E.2d 253 (1999) Moreover, even though the court recognized the appellant's recent efforts to visit the child, the court properly considered the entire record from September 2000, when the four-year-old child and appellant were first found homeless and the child was temporarily placed in DFACS custody, until March 2003, when the court terminated parental rights to the then six-year-old child. During this time, appellant failed to maintain contact with DFACS or visit with the child for more than a one-year period, and she never accomplished court-ordered goals for reunification or demonstrated the ability to adequately care for the child. The parent's past conduct is properly considered in determining whether conditions of deprivation are likely to continue. In the Interest of J.L.Y., 184 Ga.App. 254, 257, 361 S.E.2d 246 (1987). "The decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." Id. These facts also supported the court's finding pursuant to OCGA § 15-11-94(b)(4)(C) that proper parental care and control was absent because, for more than a year prior to the October 2001 termination petition, the appellant, without justifiable cause, failed significantly *90 to develop and maintain a parental bond with the child, or to provide for the child's care and support, or to comply with court-ordered plans seeking to reunite appellant with the child. Accordingly, there was clear and convincing evidence to support the court's finding that the child's deprived status was caused by the absence of proper parental care and control that was likely to continue without remedy, and was likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94(b)(4); In the Interest of P.A.T.L., 264 Ga.App. 901, 904, 592 S.E.2d 536 (2003). It follows that there was also clear and convincing evidence supporting the court's finding of parental misconduct or inability sufficient to require consideration of whether termination of parental rights was in the child's best interest. OCGA § 15-11-94(a), (b)(4).
The evidence was also sufficient to support the juvenile court's determination pursuant to OCGA § 15-11-94(a) that, there being clear and convincing evidence of parental misconduct or inability, termination of appellant's parental rights was in the best interest of the child, considering the child's physical, mental, emotional, and moral needs, and the child's need for a secure and stable home. The same factors which showed the existence of parental misconduct or inability also supported the finding that termination of appellant's parental rights was in the child's best interest. In the Interest of G.K.J., 187 Ga. App. 443, 444, 370 S.E.2d 490 (1988). In making this finding, the court properly considered that the foster home where the child has been living since being placed in DFACS custody in September 2000 has expressed an interest in adopting the child. In the Interest of P.A.T.L., 264 Ga.App. at 904, 592 S.E.2d 536.
Judgment affirmed.
PHIPPS and MIKELL, JJ., concur.
NOTES
[1] Evidence showed that the child's biological father, who was either unknown or could not be located, never married the mother or legitimated the child; never supported or formed a bond with the child; and did not appear at any proceedings concerning the child. The father's parental rights were terminated by the juvenile court in an order entered on October 23, 2002.