631 S.E.2d 467 (2006)
279 Ga. App. 449
In the Interest of T.G.Y., a child.
No. A06A0429.
Court of Appeals of Georgia.
May 17, 2006.
*469 Michael S. Webb, Assistant Public Defender, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Cynthia N. Johnson, Cohutta, for appellee.
*470 BERNES, Judge.
The biological father of T.G.Y. appeals an order entered by the Juvenile Court of Whitfield County terminating his parental rights. The father contends that the evidence did not support a finding of parental misconduct or inability, or that termination of his parental rights was in the best interest of T.G.Y. He also argues that the juvenile court abused its discretion by allowing an adoption caseworker for the Department of Family and Children Services ("DFCS") to remain in the courtroom during the termination hearing over his counsel's objection. For the reasons that follow, we affirm.
In reviewing a juvenile court's decision to terminate parental rights, we view the evidence in the light most favorable to the appellee and determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. In so doing, we do not weigh the evidence or determine the credibility of witnesses, but defer to the juvenile court's factfinding.
(Punctuation and footnotes omitted.) In the Interest of V.M.T., 243 Ga.App. 732, 735(3), 534 S.E.2d 452 (2000).
So construed, the record reflects that T.G.Y. is a male child who was just under four years old at the time of the termination hearing. Appellant and T.G.Y.'s mother were never married. T.G.Y. and his three half-siblings, all of whom have different fathers, were taken from their mother following her arrest for theft by taking and placed in shelter care in March 2003. Appellant was incarcerated for possession of methamphetamine at the time. Appellant consented to the entry of an order finding T.G.Y. deprived. The juvenile court awarded temporary custody to DFCS. Appellant did not appeal that order.
DFCS subsequently developed a reunification case plan for T.G.Y. on April 30, 2003. Appellant was required to pay child support, legitimate T.G.Y., resolve all legal issues, obtain and maintain an income source and stable housing, obtain childcare services or assure T.G.Y.'s proper supervision at all times, attend and successfully complete parenting classes, cooperate with and follow the recommendations of parent aide/family service workers, establish and maintain a relationship with T.G.Y., and obtain a substance abuse assessment and follow all treatment recommendations.
Appellant was released from jail in August 2003 and by all accounts made positive progress toward his case plan. A review panel that convened in December 2003 noted that appellant was residing with T.G.Y.'s mother in a two-bedroom house, had been employed at a security company for three months, had completed psychological counseling and was receiving parenting counseling, and had produced clean drug screenings since August 2003. He maintained regular visits with T.G.Y., although he had not yet begun making child support payments.
Appellant's forward progress ceased, however, when he was arrested in both March and April 2004 for possession of methamphetamines. Appellant pled guilty to a felony count of violation of the Georgia Controlled Substances Act as a result of the April 2004 possession charge and was sentenced to serve five years in prison, to be suspended upon his serving three years.[1] In March 2005, DFCS filed a petition to terminate appellant's parental rights based upon appellant's failure to complete his case plan goals, his failure to visit with or support T.G.Y. for over a year, and his history of felony imprisonment. A hearing was held in August 2005, after which the juvenile court entered an order terminating appellant's parental rights.
1. The criteria for terminating parental rights are well established.
First, there must be a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, *471 mental, emotional, or moral harm to the child. If these four factors exist, then the court must determine whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home.
(Footnotes omitted.) In the Interest of V.M.T., 243 Ga.App. at 735-736(3), 534 S.E.2d 452. See OCGA § 15-11-94(b)(4).
(a) Parental Misconduct or Inability. Appellant does not contest that T.G.Y. is deprived or that lack of parental care has caused this deprivation. Rather, he challenges the sufficiency of the evidence regarding the likelihood of continued deprivation by appellant and its demonstrable negative effect on the child.
(i) Likelihood of Continued Deprivation. "It is well settled that courts may consider the past conduct of a parent in determining whether the deprivation is likely to continue." (Citations omitted.) In the Interest of S.L.B., 265 Ga.App. 684, 688(1), 595 S.E.2d 370 (2004). Thus, the juvenile court was authorized to consider and rely upon evidence of appellant's extensive criminal history and the resulting incarcerations. "Although imprisonment alone does not always compel a termination of parental rights, it will support such a ruling when adequate aggravating circumstances are shown to exist." (Citations and punctuation omitted.) In the Interest of L.F., 203 Ga.App. 522, 417 S.E.2d 344 (1992). One such aggravating circumstance is a history of repetitive incarcerations for the commission of criminal offenses or parole violations. Id. See also In the Interest of T.B., 274 Ga.App. 147, 152, 616 S.E.2d 896 (2005). In addition to two habitual violator convictions, appellant has pled guilty to at least four violations of the Georgia Controlled Substances Act, resulting in significant prison time. He has also been arrested for possession of methamphetamine at least three times since the birth of T.G.Y.
The juvenile court also relied upon evidence showing that appellant has seven other illegitimate children, none of whom he regularly supports. He has never paid any support for T.G.Y. See OCGA § 15-11-94(b)(4)(C)(ii). "A father's failure to support his child, even in the absence of an order directing the father to pay a specific amount for the child's support, is compelling evidence that the father is not an able parent." (Citation omitted.) In the Interest of T.B., 267 Ga.App. 484, 486-487(1), 600 S.E.2d 432 (2004).
Finally, at the time that the state filed the petition to terminate appellant's rights, he had failed significantly for a period of one year to meet various case plan goals and to maintain meaningful contact with T.G.Y. See OCGA § 15-11-94(b)(4)(C)(iii). Appellant argues that his failure in this regard was due solely to his imprisonment. However, "Georgia law is well settled that [appellant] cannot object to the natural consequences brought about by his own voluntary commission of criminal acts." (Citation omitted.) Turner v. Wright, 217 Ga.App. 368, 369(1), 457 S.E.2d 575 (1995).
At the time of the hearing, T.G.Y. had been in foster care for two years and five months of the less than four years that he had been alive. See In the Interest of D.M.W., 266 Ga.App. 456, 460(3), 597 S.E.2d 531 (2004). Appellant had sent letters to T.G.Y. from prison, but had not seen his son for over a year and one half. Appellant will not be eligible for parole until September, 2007 and may not be released from prison until April, 2008, at which time T.G.Y. will be at least six years old and will have been separated from his father for four years. At that time, T.G.Y. will have been in foster care for about 75 percent of his life.
The record amply supports the juvenile court's determination that T.G.Y.'s deprivation by appellant was likely to continue. "[A] criminal conviction, along with near continuous incarceration during the child's life, and the failure to comply with reunification case plans while incarcerated provides ample grounds for the termination of parental rights." (Punctuation and footnote omitted). In the Interest of D.M.W., 266 Ga.App. at 460(3), 597 S.E.2d 531.
(ii) Harm to the Child. Likewise, the trial court did not abuse its discretion *472 when it relied upon these same facts to deduce that this deprivation was likely to cause serious physical, mental, emotional, or moral harm to the child. In the Interest of J.K., 278 Ga.App. 564(2), 629 S.E.2d 529 (2006); In the Interest of S.L.B., 265 Ga.App. at 688(1), 595 S.E.2d 370; In the Interest of J.A.R.S., 262 Ga.App. 237, 240(2), 585 S.E.2d 184 (2003); In the Interest of P.A.T.L., 264 Ga.App. 901, 904(1), 592 S.E.2d 536 (2003). "The juvenile court was authorized to consider [T.G.Y.'s] need for a stable home situation and the detrimental effects of prolonged foster care. Deprivation of love and nurture is equally as serious as mental or physical disability." (Citations and punctuation omitted.) In the Interest of K.A.C., 229 Ga.App. 254, 257(3), 493 S.E.2d 645 (1997).
Moreover, T.G.Y.'s mother testified that appellant bonded with his son during the first months of his life, but also testified that their home life was riddled with methamphetamine use by both her and appellant and that T.G.Y. witnessed physical violence between the two "all the time," resulting in the mother having "black eyes" and her "whole body" being "bruised up." Harm can also be inferred from chronic drug abuse, as evidenced here by appellant's prior methamphetamine use and current conviction for methamphetamine possession. See In the Interest of J.L., 269 Ga.App. 226, 229(1), 603 S.E.2d 742 (2004). Accordingly, the trial court's finding that continued deprivation is likely to cause serious harm to the child was supported by clear and convincing evidence.
(b) Best Interest of the Child. The father also contends that the state failed to establish that termination was in the child's best interest. "The same factors that show parental misconduct or inability can support a juvenile court's finding that termination of parental rights is in the child's best interest." (Citation and punctuation omitted.) In the Interest of P.A.T.L., 264 Ga. App. at 904(2), 592 S.E.2d 536.
Further, when assessing a child's best interests, "the juvenile court may also consider the [child's] need for a stable and permanent home environment." (Footnote omitted.) In the Interest of J.A.R.S., 262 Ga.App. at 240(3), 585 S.E.2d 184. The evidence showed that T.G.Y. will have been living with the same foster family for at least four-and-one-half years when appellant is released from prison. T.G.Y. is very bonded with his foster parents, who are interested in adopting him. The caseworker testified that termination is in T.G.Y.'s best interest. T.G.Y.'s mother testified that the child "doesn't even know his daddy," but rather knows his foster father as his daddy. Indeed, T.G.Y.'s mother testified that she is voluntarily terminating her parental rights because she believes "it's the best thing for my child." The juvenile court was authorized under this evidence to conclude that termination of appellant's parental rights is in the best interest of this child. See In the Interest of T.B., 267 Ga.App. at 489(3), 600 S.E.2d 432; In the Interest of P.A.T.L., 264 Ga.App. at 904(2), 592 S.E.2d 536.
2. Appellant also contends that the juvenile court erred by permitting a DFCS adoption caseworker to remain in the courtroom during the termination hearing after appellant's counsel invoked the rule of sequestration. Because the adoption caseworker was not a witness, the rule of sequestration did not apply and the issue was whether the caseworker could observe the hearing under the closed courtroom rules set forth in OCGA § 15-11-78. That statute excludes the general public from deprivation hearings, and provides that "[o]nly the parties, their counsel, witnesses, persons accompanying a party for his or her assistance, and any other persons as the court finds have a proper interest in the proceeding or in the work of the court may be admitted by the court." OCGA § 15-11-78(a). When appellant's counsel objected to the caseworker's presence, the court explained that it requires DFCS adoption caseworkers to attend the deprivation hearings on their cases so that they do not "reinvent the wheel because they didn't hear the evidence."
OCGA § 15-11-78 "vests the juvenile judge with a broad discretion which this [C]ourt has no right to control absent a manifest abuse of discretion." (Citations omitted.) B.J.L. v. State of Ga., 173 Ga.App. 317, 319(3), 326 S.E.2d 519 (1985) (analyzed *473 under the prior Code section, OCGA § 15-11-28(c)). The juvenile court did not abuse its discretion by allowing the caseworker to attend the hearing in this case. In re K.H., 179 Ga.App. 4, 8(2), 345 S.E.2d 108 (1986).
Judgment affirmed.
ANDREWS, P.J., and BARNES, J., concur.
NOTES
[1] The district attorney's office filed a motion to enter a nolle prosequi for drug charges relating to the March 2004 violation as a result of appellant's guilty plea to the April 2004 violation.