A07A2308. IN THE INTEREST OF A. J., a child.
(654 SE2d 465)

RUFFIN, Judge.

The father of A. J. appeals the termination of his parental rights, challenging the sufficiency of the evidence.[1] He asserts that the State did not establish by clear and convincing evidence either that A. J.'s deprivation is likely to continue or that it was in her best interest to terminate his parental rights. We disagree and affirm.

On appeal from a termination of parental rights, we defer to the juvenile court's findings of fact and do not weigh the evidence or determine the credibility of witnesses.[2] Our role is to determine whether "any rational trier of fact could have found by clear and convincing evidence that the natural parents' rights to custody have been lost."[3] So viewed, the record shows that A. J. entered the custody of the Department of Family and Children Services ("DFCS") in April 2004, when she was four months old. At the time, her father was in prison, and her mother had been arrested for shoplifting. The mother was also charged with cruelty to children as a result of the shoplifting incident, as she allegedly "used [A. J.] as a shield to keep from being

---

* No enumeration of error is included in the brief, in violation of our Court of Appeals Rule 25 (a) (2).

[1] The mother's parental rights were terminated by the same order, but she has not appealed.

[2] See *In the Interest of K. S. W.*, 233 Ga. App. 144, 147 (1) (503 SE2d 376) (1998).

[3] *In the Interest of A. F.*, 283 Ga. App. 509, 510 (642 SE2d 148) (2007).

arrested." This arrest triggered a revocation of the mother's probation for an earlier conviction, and she was incarcerated.

When A. J. was taken into DFCS custody, the mother had already had her parental rights to six other children terminated. Accordingly, DFCS initially sought the juvenile court's approval of a nonreunification case plan with respect to A. J., which the parents opposed. This plan was not approved by the juvenile court. In October 2004, the father signed a concurrent case plan that required him to obtain stable housing and a source of income with which to support A. J., complete parenting classes, obtain a psychological evaluation, and legitimate A. J.[4] The case plan, which was made the order of the juvenile court, also required the father to demonstrate that he is "capable of supporting and caring for the [child] in a manner that would be beneficial to said [child] and that [the father] will be able to sustain this stability over an extended period of time."

In March 2005, the juvenile court approved a nonreunification case plan with the goal that A. J. be adopted; in June 2005, DFCS petitioned for the termination of the parents' rights. Both parents were incarcerated at that time.[5] A termination hearing was held on September 13, 2005, and the juvenile court terminated the parental rights of both the mother and father. The father had not completed any of the goals in the October 2004 case plan other than legitimating A. J. He had visited A. J. approximately six times in the fifteen months she had been in DFCS custody and had paid no child support. He admitted that his felony convictions and incarcerations had interfered with his ability to develop a relationship with A. J. The juvenile court found that: "[b]oth parents have a history of chronic, unrehabilitated abuse of cocaine, which has rendered them incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of the child"; the parents' incarceration negatively affected the parent-child relationship; and the parents failed to develop and maintain a parental bond, to provide for A. J.'s care and support, or to comply with their case plan.

In order for the juvenile court to terminate a parent's rights to his child, it must first find clear and convincing evidence of parental misconduct or inability.[6] To establish parental misconduct or inability, the following four factors must be proved: "(1) the child must be

---

[4] The father was not named on the birth certificate; he did legitimate A. J. after she was taken into DFCS custody.

[5] The father had been released from prison in June 2004; however, he was arrested on drug charges on November 23, 2004, and was again incarcerated. He was released in July 2005. At the time of the termination hearing, the father had three felony convictions and a fourth felony charge pending.

[6] See OCGA § 15-11-94 (a).

deprived; (2) the lack of proper parental care or control by the parent in question must cause the deprivation; (3) the cause of the deprivation must be likely to continue; and (4) continued deprivation must be likely to cause the child serious physical, mental, emotional, or moral harm."[7] Once these four factors are established, the juvenile court then determines "whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home."[8]

1. The father contends that there was insufficient evidence to support the juvenile court's finding that A. J.'s deprivation was likely to continue. He argues that although he did not have housing or employment at the time of the termination, "if given time he would have been able to establish a home for his child and provide for her as any other parent would." The record reveals, however, that in the fifteen months A. J. was in the custody of DFCS, the father was unemployed, was released from prison and then arrested on new charges and incarcerated again, failed to pay any child support, and completed only one goal of his case plan — A. J.'s legitimation. It is well settled that the juvenile court may consider a parent's past conduct, including felony convictions and incarceration, when evaluating whether deprivation is likely to continue.[9] Here, the father has a history of felony convictions and admits that his repeated incarcerations have prevented him from bonding with A. J. He was arrested again on felony charges while A. J. was in DFCS custody. He does not have a job or stable housing; he has not completed a psychological evaluation or parenting classes; and he has paid no child support.[10] Accordingly, the trial court was authorized to find by clear and convincing evidence that the causes of A. J.'s deprivation were likely to continue.[11]

---

[7] In the Interest of L. G., 273 Ga. App. 468, 470-471 (2) (615 SE2d 551) (2005); see also OCGA § 15-11-94 (b) (4) (A) (i)-(iv) (setting forth basis for court's determination of parental misconduct or inability).

[8] In the Interest of B. W., 287 Ga. App. 54, 62 (651 SE2d 332) (2007); see also OCGA § 15-11-94 (a).

[9] See In the Interest of M. D. F., 270 Ga. App. 460, 464-465 (606 SE2d 658) (2004); see also OCGA § 15-11-94 (b) (4) (B) (iii) (in determining whether child is without proper parental care or control, juvenile court may consider felony conviction and imprisonment "which has a demonstrable negative effect on the quality of the parent-child relationship").

[10] See In the Interest of T. G. Y., 279 Ga. App. 449, 451-452 (1) (a) (i) (631 SE2d 467) (2006) (failure to meet case plan goals cannot be excused by imprisonment; a father " 'cannot object to the natural consequences brought about by his own voluntary commission of criminal acts' ").

[11] See id. at 452; In the Interest of R. D. B., 282 Ga. App. 628, 631-632 (1) (b) (639 SE2d 565) (2006) (" 'A criminal conviction, along with near continuous incarceration during the child's life, and the failure to comply with reunification case plans while incarcerated provides ample grounds for the termination of parental rights.' ").

2. The father also argues that there was insufficient evidence to establish that it was in A. J.'s best interest to terminate his parental rights. He asserts that her physical needs were being met in the foster home, and because she is so young, "arguably she would not [have] the ability to be harmed mentally, morally[,] or emotionally." We disagree. In determining the best interest of a child, the juvenile court may consider the child's need for a stable and permanent home.[12] A. J. has been in the same foster home since May 2004, and the foster mother wishes to adopt her. The father has failed to demonstrate that he can maintain a stable home for A. J., as evidenced by his repeated felony convictions and incarceration, his lack of housing or employment, and his failure to form a parental bond with her. Given these facts, the juvenile court did not err in finding that termination of the father's parental rights is in the best interest of the child.[13]

*Judgment affirmed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED NOVEMBER 27, 2007.

*Stephanie Thornton,* for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Elizabeth M. Williamson, Assistant Attorney General,* for appellee.

---

[12] See *T. G. Y.,* supra at 453 (1) (b); *In the Interest of B. D.,* 281 Ga. App. 725, 728 (2) (637 SE2d 123) (2006).

[13] See *In the Interest of M. D. L.,* 285 Ga. App. 357, 360 (2) (646 SE2d 331) (2007); *In the Interest of A. C.,* 272 Ga. App. 165, 168 (2) (611 SE2d 766) (2005).