A06A0539. IN THE INTEREST OF C. A. et al., children.
(628 SE2d 151)

BLACKBURN, Presiding Judge.

Following a final order terminating his parental rights, the biological father of C. A. and M. A. appeals, contending: (1) that the evidence at trial was not sufficient to support a finding of parental misconduct or inability, and (2) that the juvenile court erred in finding that termination was in the best interests of the children. For the reasons below, we affirm.

The rule governing the termination of parental rights is well established:

> Before terminating a parent's rights, a juvenile court must employ a two-prong test. In the first prong, the court must decide whether there is present clear and convincing evidence of parental misconduct or inability. OCGA § 15-11-94 (a). Parental misconduct or inability, in turn, is proven by

evidence showing: (1) that the child is deprived; (2) that lack of proper parental care or control is the cause of deprivation; (3) that the cause of deprivation is likely to continue or will not likely be remedied; and (4) that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94 (b) (4) (A). In the second prong of the termination test, the juvenile court must consider whether termination of parental rights would be in the best interest of the child.

(Punctuation omitted.) *In the Interest of R. W.*[1]

1. In his first enumeration, the father contends that the evidence did not support the juvenile court's finding of parental misconduct or inability under OCGA § 15-11-94 (b) (4) (A). We disagree.

> The standard of review on appeal from a termination of parental rights is whether, after reviewing the evidence in the light most favorable to the juvenile court's disposition, any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. On appeal, this Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met.

(Citation and punctuation omitted.) *In the Interest of K. S. W.*[2]

So viewed, the record shows that when C. A. was approximately two months old, he was admitted to the hospital and diagnosed with shaken infant syndrome, two fractured bones, and other injuries from a prior incident. His twin sister, M. A., was also examined at that time and diagnosed with three fractures. The Douglas County Department of Family & Children Services (DFACS) took the children into custody and placed them in a temporary foster home. The children's father admitted to having shaken C. A., pled guilty to two counts of cruelty to children, and was sentenced to serve twelve years in prison. After a hearing before the Douglas County Juvenile Court, C. A. and M. A. were adjudicated deprived. That decision was not appealed.

A juvenile court's finding of parental misconduct or inability is premised on four findings, which must be supported by clear and convincing evidence: "(i) the child is deprived; (ii) lack of proper parental care or control caused the deprivation; (iii) the cause of the

[1] *In the Interest of R. W.*, 248 Ga. App. 522, 523-524 (1) (546 SE2d 882) (2001).
[2] *In the Interest of K. S. W.*, 233 Ga. App. 144, 147 (1) (503 SE2d 376) (1998).

deprivation is likely to continue; and (iv) continued deprivation is likely to cause serious physical, mental, emotional or moral harm to the child." *In the Interest of C. R. G.*[3] See OCGA § 15-11-94 (a), (b) (4) (A).

(a) *The Children are Deprived.* "There is no question in this case that [C. A. and M. A. are] deprived child[ren], as appellant is bound by the trial court's prior findings of deprivation which were never appealed." *In the Interest of C. R. G.*, supra at 164.

(b) *Lack of Proper Parental Care or Control Caused the Deprivation.* "Lack of proper parental care or control may be shown by conviction of the parent of a felony and imprisonment therefor which has a demonstrable negative effect on the quality of the parent child relationship, and also by evidence of past physical, mental, or emotional neglect of the child or of another child by the parent." (Citation omitted.) *In the Interest of K. S. W.*, supra at 148 (1). Here, both conditions exist. The father was incarcerated for his felony convictions of cruelty to children for injuring C. A. and M. A., and he had not seen his children or attempted to contact them in the year prior to the filing of the termination petition nor at any time thereafter. In addition to the children's injuries, this caused demonstrable negative effects in that he had not formed a bond with them or offered to pay child support. Therefore, combined with the uncontroverted evidence of physical abuse by the father, there is ample evidence to support the juvenile court's finding that the father's lack of proper parental care or control caused C. A. and M. A.'s deprivation.

In addition, because the father did not have custody of the children, the juvenile court must also consider whether the father, "without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination . . . [t]o develop . . . a parental bond . . . [, t]o provide for the care and support of the child[ren] . . . [, and t]o comply with a court ordered" reunification plan. OCGA § 15-11-94 (b) (4) (C) (i)-(iii). There was uncontroverted evidence that the father did not comply with his case plan, had not formed a bond with the children, and had not provided financial support to the children. This supports the court's finding under OCGA § 15-11-94 (b) (4) (C).

(c) *The Cause of the Deprivation is Likely to Continue.* The evidence further supported a finding that the cause of the deprivation is likely to continue. With respect to the physical well being of the children, the record shows that the two-month-old children suffered injuries caused by the father on at least two separate occasions, and the DFACS worker supervising the foster care testified that she

---

[3] *In the Interest of C. R. G.*, 272 Ga. App. 161, 163 (611 SE2d 784) (2005).

feared additional abuse should the father be allowed further contact with the children. With respect to parental bonding, the father was sentenced to serve a 12-year prison term, he had not taken any steps to comply with his case plan, and he had not attempted to contact the children. Under these circumstances, the juvenile court was authorized to find that the deprivation was likely to continue.

(d) *Continued Deprivation is Likely to Cause Serious Physical, Mental, Emotional or Moral Harm to the Children.* Finally, based on undisputed evidence of repeated injuries to the children, and that the father admitted that he "hurt the babies," the juvenile court was authorized to find that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. See *In the Interest of J. D. A.*[4] Therefore, we discern no error in the juvenile court's finding of parental misconduct or inability.

2. The father next contends that the juvenile court erred in finding that termination of his parental rights was in the best interests of C. A. and M. A. We disagree.

The determination as to the children's best interests must be made after considering "the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home." *In the Interest of C. R. G.*, supra at 165; see OCGA § 15-11-94 (a). A juvenile court has broad discretion in determining how the interests of the children are best served, *In the Interest of M. L. P.*,[5] and "[t]hose same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest." (Punctuation omitted.) *In the Interest of C. R. G.*, supra.

Here, the father admitted that he physically abused C. A. and M. A., and the uncontroverted evidence showed that the twin children suffered multiple bone fractures by the age of two months. The father has not requested visitation with his children, nor has he contributed monetarily to their upbringing. The children have been placed in foster care, and the children's mother, who has a job and stable housing, has been visiting the children regularly and otherwise cooperating with the DFACS case plan to reunite her with the children. A DFACS caseworker testified that if the father were eventually brought back into the home, it would compromise the mother's ability to complete her case plan and to stabilize a home for

---

[4] *In the Interest of J. D. A.*, 267 Ga. App. 103, 106 (1) (598 SE2d 842) (2004).

[5] *In the Interest of M. L. P.*, 236 Ga. App. 504, 510 (1) (d) (512 SE2d 652) (1999).

the children. In light of these circumstances, the juvenile court was authorized to find that termination was in the best interests of the children.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED MARCH 7, 2006.

*Sonya Chachere-Compton*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Andrea R. Moldovan*, for appellee.