A06A1302. IN THE INTEREST OF E. K., a child.
(635 SE2d 214)

PHIPPS, Judge.

The father of E. K. appeals an order of the juvenile court terminating his parental rights. He contends that the court erred in finding that the child was deprived, that the deprivation was likely to continue and would not be remedied, and that termination of his parental rights was in the child's best interest. Finding no error, we affirm.

The termination of parental rights is a two-step process.[1]

> The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical,

---

[1] See OCGA § 15-11-94 (a); *In the Interest of A. M.*, 275 Ga. App. 630, 631 (621 SE2d 567) (2005).

mental, emotional, or moral harm to the child. If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home.[2]

On appeal, we must view the evidence in a light most favorable to the juvenile court's order and determine whether a rational trier of fact could have found by clear and convincing evidence that the parent's rights should have been terminated. We do not weigh the evidence and must defer to the trial judge as the factfinder.[3]

The evidence here showed that in 1986 the father was convicted of homicide by vehicle, DUI, and reckless driving and was given sentences totaling ten years incarceration and five years on probation. In 1993, he was convicted of burglary and theft by taking and given sentences totaling three years incarceration and three years on probation. In June 1997, while he was on probation, he was convicted of possession and sale of cocaine, possession of a firearm during commission of a crime, and possession of a firearm by a convicted felon, and he was given sentences totaling 15 years incarceration. As a result, he was re-incarcerated in September 1997.

His child, E. K., was born the following month. E. K. and his four half-siblings lived with his mother and stepfather (who is the father of two of the half-siblings). After one of the half-siblings was admitted to the hospital in April 2002 in a near-death condition due to medical neglect, E. K. and all of the other children were removed from the home and placed in the temporary custody of the Department of Family and Children Services (DFCS). E. K. was placed in foster care. Following each of a series of hearings beginning in May 2002, the children were found to be deprived. At the time of one of the hearings, the father had been released from incarceration; and he was present at the hearing and represented by counsel. Although he was incarcerated and thus not present at some of the other hearings, he was properly served.

The juvenile court initially approved case plans for reunification of the children with the mother and stepfather. In 2003, however, the mother and stepfather were convicted of cruelty to children and each given 20-year sentences; and the goal of the case plans was changed to nonreunification with all of the parents. But on April 27, 2004, the

---

[2] Id. (footnotes omitted).
[3] *In the Interest of S. H. P.*, 243 Ga. App. 720, 721 (534 SE2d 161) (2000) (citation omitted).

father was released from incarceration and remained so until January 18, 2005; and during that time period, E. K.'s case plan was modified to provide for possible reunification with him. In August 2005, however, DFCS petitioned for termination of the parental rights of both the mother and father. Toward the latter part of November 2005, the father was released from prison. About a week later, the petition came on for a hearing.

Viewed in a light most favorable to the juvenile court's order, the evidence introduced at the hearing showed that during the period the father was released from incarceration he was gainfully employed but did not comply with an order to pay child support; that he did not exercise any significant visitation with E. K. or ask to visit him; and that, throughout the child's life, the father had shown little interest in E. K. by seldom attempting to communicate with him. The evidence further showed that E. K. is a special needs child who undergoes ongoing psychological therapy, is in need of medication management services, and would thus be harmed if not placed in a stable home environment with consistent parenting structure.

The unappealed deprivation orders were sufficient to establish that E. K. was a deprived child.[4] The father's incarceration history throughout most of the child's life, his failure to provide for the support of the child, and his lack of interest in the child, all of which were evidence that he cannot be relied on to meet the child's special needs, sufficiently showed that the cause of the child's deprivation was likely to continue and would not be remedied and, therefore, that termination of the father's parental rights was in the child's best interest.[5]

*Judgment affirmed. Ruffin, C. J., and Smith, P. J., concur.*

DECIDED JULY 28, 2006.

*Whitaker & Whitaker, Alfonza Whitaker*, for appellant.

---

[4] *In the Interest of A. C.*, 234 Ga. App. 717, 719 (507 SE2d 549) (1998).

[5] See *Stills v. Johnson*, 272 Ga. 645, 651 (3) (533 SE2d 695) (2000) (a parent's history of incarcerations for repeated criminal offenses during the child's life combined with failure to make an effort to communicate with child may support a termination of parental rights); *In the Interest of T. B.*, 274 Ga. App. 147, 152 (616 SE2d 896) (2005) (courts are authorized to consider special needs of child and parent's inability to provide for those needs in determining whether termination of parental rights is in child's best interest); *In the Interest of M. L. S.*, 273 Ga. App. 554, 558 (1) (615 SE2d 615) (2005) (parent has statutory duty to support child with or without court order).

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General*, for appellee.