A07A1889. In the Interest of K. A. C., a child.
(659 SE2d 703)

Phipps, Judge.

The mother of K. A. C. appeals a juvenile court order terminating her parental rights, challenging the sufficiency of the evidence. Because the evidence was sufficient, we affirm.

Before terminating parental rights, a juvenile court must engage in a two-step procedure.[1] The court must first find parental misconduct or inability, based on clear and convincing evidence that (i) the child is deprived; (ii) the lack of proper parental care or control caused the child's deprivation; (iii) such cause of deprivation is likely to continue; and (iv) the continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child.[2] If these four factors are satisfied, the court must then find that termination of parental rights is in the child's best interest, considering the physical, mental, emotional, and moral needs of the child and his or her need for a secure and stable home.[3]

On appeal, we view the evidence in a light most favorable to the juvenile court's ruling and determine whether a rational trier of fact could have found by clear and convincing evidence that the parent's rights should have been terminated.[4]

Viewed in this manner, the evidence showed that in February 2002, the juvenile court adjudicated six-year-old K. A. C. and his six siblings deprived, after determining that the children were "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for [their] physical, mental, or emotional health."[5] The court found that K. A. C. and his siblings had been suspended from school on numerous occasions and that school personnel had reported that they had "attend[ed] school often in dirty, ill-fitting clothes, with poor personal hygiene, stating that they had not eaten." The court further determined that the children's mother had caused their deprivation through educational and supervisory neglect. Consistent with the recommendation of the Department of Family and Children Services (DFCS), K. A. C. and his siblings remained with their mother, subject to the following conditions: the mother and each of her children must submit to psychological evaluations and follow the recommendations of the evaluator; the mother must maintain housing adequate for herself and her

---

[1] OCGA § 15-11-94 (a).

[2] OCGA § 15-11-94 (b) (4) (A) (i)-(iv); *In the Interest of D. L. S.*, 271 Ga. App. 311, 313 (609 SE2d 666) (2005).

[3] OCGA § 15-11-94 (a).

[4] *In the Interest of E. K.*, 280 Ga. App. 818, 819 (635 SE2d 214) (2006).

[5] See OCGA § 15-11-2 (8) (A).

children; the children must attend school regularly, report to school on time, and be clothed appropriately; the mother must cooperate with the schools in addressing her children's behavioral problems; and the mother must cooperate with DFCS representatives.

A clinical psychologist saw the mother in February 2002 and determined that she was suffering with "a chronic level of depression, which can be manifested in terms of irritability, [and] difficulty getting motivated." According to the psychologist, the mother's depression was causing her problems with "energy and motivation," "following through with tasks," and "being overwhelmed." The psychologist further determined that the mother's "overall cognitive abilities, being at the sixth percentile, place[d] her below 94 percent of the population" and made it difficult for her to properly tend to "special needs children who require a lot more attention than would be typical for other children."

In March 2003, the juvenile court ruled that K. A. C. and his six siblings remained deprived and removed them from the mother's home because the mother had failed to present herself and the children for psychological evaluation in a timely fashion, failed to maintain a stable home, failed to ensure that her children consistently attended school, failed to ensure they were appropriately clothed for school, and failed to address the children's behavioral issues. Temporary legal custody of K. A. C. was awarded to DFCS. A plan to reunite K. A. C. with his mother required the mother to maintain employment for one year, timely complete a parenting class, undergo individual and family counseling, participate in an academic or tutoring program for her own educational needs, and maintain stable housing suitable for her children.

In August 2004, in a proceeding concerning only the three youngest children (including K. A. C.), the juvenile court terminated reunification services for those children with the mother upon learning that K. A. C. and one of his brothers had been sexually abused by their maternal aunt for years; that the mother had been made aware of this abuse six years earlier, but had allowed continued contact between the children and their aunt; and that the aunt had continued to sexually abuse the boys. The juvenile court noted that the boys had begun "acting out sexually." Meanwhile, from 2003 through 2005, the mother had limited contact with K. A. C. and his siblings, who were in the custody of DFCS. In January 2005, after a hearing concerning the three youngest children, the juvenile court ruled that they remained deprived of proper parental care and control. On June 12, 2006, DFCS petitioned to terminate the mother's parental rights to K. A. C. and his youngest sibling. After a hearing, the petition was granted.

On appeal, the mother challenges the termination of her parental rights to K. A. C. She claims that she was progressing on her reunification case plan in that she had been working at two fast food restaurants and had completed a parenting class. In addition, she asserts that there was no showing that she had used drugs, acted violently, or treated K. A. C. improperly.

1. The evidence sufficiently showed that K. A. C. was deprived. Unappealed deprivation orders of the juvenile court may be used to establish that a child is deprived.[6] Here, the mother failed to appeal every juvenile court order adjudicating K. A. C. as a deprived child. Thus, the mother is bound by the juvenile court's findings of deprivation.

2. The evidence sufficiently showed that lack of proper parental care or control caused K. A. C.'s deprivation. In determining whether a child lacks proper parental care or control, the court may consider, among other things, the parent's ongoing physical, mental, and emotional neglect of the child, as well as the parent's past physical, mental, or emotional neglect of another child.[7] In addition, "[a] mental disability that renders a parent incapable of caring for the child is a valid legal basis for termination."[8] Furthermore, because K. A. C. was not in his mother's custody, the court was authorized to consider whether the mother, without justifiable cause, had failed significantly for at least one year prior to the filing of the termination petition (i) to develop and maintain a parental bond with K. A. C. in a meaningful, supportive manner; or (ii) to comply with a court ordered reunification plan.[9]

The juvenile court found in February 2002 that K. A. C. suffered from educational and supervisory neglect. Thereafter, the mother did not ensure that K. A. C. attended school regularly or that he was appropriately clothed when he was in attendance. After learning that K. A. C. was being sexually abused by his aunt, the mother thereafter failed to protect him from that abuse.[10] He was removed from her custody in March 2003. The mother testified that during the next 24 months, she visited K. A. C. "more than three or four times," but she could not remember the exact number of visits. She admitted that,

---

[6] See *In the Interest of M. S.*, 279 Ga. App. 254, 261 (1) (630 SE2d 856) (2006); *In the Interest of D. L. S.*, supra at 313 (1) (a).

[7] OCGA § 15-11-94 (b) (4) (B) (v).

[8] *In the Interest of B. J. F.*, 276 Ga. App. 437, 441 (1) (b) (623 SE2d 547) (2005) (citation and punctuation omitted).

[9] OCGA § 15-11-94 (b) (4) (C) (i), (iii).

[10] See *In the Interest of S. Y.*, 284 Ga. App. 218, 219 (644 SE2d 145) (2007) (evidence that mother left children with aunt, after mother had agreed that aunt was unsuitable to supervise the children, was probative of mother's inability to protect her children).

during the twelve months before the termination hearing held in August 2006, she visited K. A. C. and her youngest child only about six or seven times. For many of the visitation appointments, the mother was late. And during the visitations, the DFCS case manager frequently had to coax K. A. C. to go to his mother. The evidence also showed that from April 2005 through August 2006, the mother had lived in four different residences in three cities (Atlanta, Savannah, and Vidalia). At the time of the hearing, she, along with two of her teenaged children, had been living in their current home for only two months. These moves had resulted in employment disruptions.

Notwithstanding the mother's claims of improvement, the juvenile court determines whether a parent's conduct warrants hope of rehabilitation, not an appellate court.[11] The juvenile court was authorized in this case to determine that K. A. C.'s deprivation was caused by a lack of proper parental care or control.[12]

3. The evidence sufficiently showed that K. A. C.'s deprivation likely would continue. "[E]vidence of past conduct may be considered in determining whether the deprivation is likely to continue and cause harm to the child."[13] Here, the evidence showed that the mother had failed to ensure that K. A. C.'s educational needs were being met; failed to safeguard him from the sexually abusive aunt; failed to maintain regular contact with K. A. C.; and failed to maintain adequate and stable housing and employment. And although the mother testified that she was prepared to provide for K. A. C. financially, emotionally, and physically, "[t]he decision as to a child's future must rest on more than positive promises which are contrary to negative past fact."[14] The evidence authorized a finding that the mother's past actions would likely continue and cause K. A. C.'s deprivation.[15]

4. The evidence sufficiently showed that continued deprivation would likely cause K. A. C. serious harm. Here, the same facts that support the juvenile court's determinations that K. A. C. was deprived by lack of proper parental care or control and that the

---

[11] *In the Interest of B. J. F.*, supra.

[12] See id.

[13] *In the Interest of D. L. T.*, 283 Ga. App. 223, 227 (1) (641 SE2d 236) (2007) (citation and punctuation omitted).

[14] *In the Interest of C. J.*, 279 Ga. App. 213, 217 (1) (630 SE2d 836) (2006) (citation and punctuation omitted); see *In the Interest of K. A. S.*, 279 Ga. App. 643, 650 (1) (c) (632 SE2d 433) (2006).

[15] See *In the Interest of H. Y.*, 270 Ga. App. 497, 504-505 (1) (c) (606 SE2d 679) (2004) (a showing was made that the pattern of deprivation would continue in light of mother's emotional instability, her illogical thoughts, and her impaired judgments; the mother's refusal to accept responsibility for her actions; the mother's failure to seek proper treatment for her child; and the mother's failure to end contact between her child and his sexual molester).

deprivation was likely to continue if the child were placed with his mother also support a determination that continued deprivation would likely cause him serious harm.[16] Moreover, it is well established that "children need permanence of home and emotional stability or they are likely to suffer serious emotional problems."[17] The juvenile court is authorized to consider the adverse effects of prolonged foster care in determining whether continued deprivation is likely to cause the child serious physical, mental, emotional, or moral harm.[18] Here, K. A. C. had been living with his foster parents for three years prior to the termination hearing; he had bonded with them and expressed a desire to be adopted by them; and the foster parents stood ready to adopt K. A. C.

5. There was sufficient evidence that it was in K. A. C.'s best interest to terminate his mother's parental rights. To determine whether termination of parental rights is in the best interest of the child, the court shall consider the physical, mental, emotional, and moral condition and needs of the child, including his or her need for a secure and stable home.[19] Here, the mother's past conduct showed her inability or unwillingness to provide a secure and stable home for K. A. C. Moreover, K. A. C. had lived in the same foster placement for three years and had bonded with his foster parents, who wished to adopt him.[20] Evidence that showed the mother's parental misconduct or inability also supported a finding that termination of her parental rights was in K. A. C.'s best interest.[21] In addition, the guardian ad litem opined that termination was in K. A. C.'s best interest.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED MARCH 14, 2008.

*Richard C. Metz*, for appellant.

---

[16] *In the Interest of K. A. S.*, supra at 651 (1) (d).

[17] *In the Interest of B. I. F.*, 264 Ga. App. 777, 781 (1) (592 SE2d 441) (2003) (citation omitted).

[18] *In the Interest of R. D. B.*, 282 Ga. App. 628, 632 (1) (c) (639 SE2d 565) (2006).

[19] OCGA § 15-11-94 (a).

[20] See *In the Interest of T. J.*, 281 Ga. App. 673, 676 (1) (637 SE2d 75) (2006) (termination of parental rights was in the best interests of the children where the children needed permanency, stability, and a safe environment; the mother was unable to provide such an environment; the children had been in the care of DFCS for an extended period; and the foster parents, who expressed a desire to adopt the children, had bonded with them, given them a stable home, and provided for the children's medical needs).

[21] See *In the Interest of C. A.*, 278 Ga. App. 93, 96 (2) (628 SE2d 151) (2006).

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Elizabeth M. Williamson, Assistant Attorney General, Leo G. Beckmann, Jr.*, for appellee.