585 S.E.2d 184 (2003)
262 Ga. App. 237
In the Interest of J.A.R.S. et al., children.
No. A03A0581.
Court of Appeals of Georgia.
July 9, 2003.
*185 Rodney Q. Quarles, Chatsworth, for appellant.
Thurbert E. Baker, Atty. Gen., Dennis R. Dunn, Deputy Atty. Gen., William C. Joy, Senior Asst. Atty. Gen., Shalen S. Nelson, Asst. Atty. Gen., Cynthia N. Johnson, Dalton, for appellee.
PHIPPS, Judge.
The biological mother of J.A.R.S., J.A.L.S. and J.N.C.S., triplets, appeals a Murray County Juvenile Court order terminating her parental rights. She claims that the evidence was insufficient to support the termination of her parental rights and that termination of her parental rights is not in the best interests of her children. Because we find that the evidence was sufficient to terminate the mother's parental rights and that the evidence authorized the juvenile court to find that termination was in her children's best interests, we affirm.
J.A.R.S., J.A.L.S. and J.N.C.S. have been in foster care supervised by the Department of Family and Children Services since February 2001, when they were almost three months old. The children were medically fragile and required special care. The mother consented to entry of an order finding the children to be deprived and placement of custody with DFACS. According to the foster mother, when she received the children, they were very dirty, seemed hungry, had an odor about them and "their bottoms were in very, very bad shape."
After obtaining custody, DFACS developed a reunification plan that required the mother to maintain meaningful contact with the children, maintain stable housing with adequate space for the family for six consecutive months, pay child support for the children in the amount of $30 per week, attend and complete a parenting skills course, address her mental health needs by completing a psychological evaluation and following through with recommended treatment, address her drug and alcohol problems, obtain and maintain employment and cooperate with DFACS personnel.
The Murray County Juvenile Court conducted a termination hearing in May 2002 and found that the mother had met fully only one of the case plan goalscompletion of a parenting skills course. The DFACS case *186 manager testified that forty-one supervised visits were scheduled for the mother and her children, that the mother cancelled five visits and failed to show for five other visits and that DFACS cancelled five more visits on advice from the children's doctor. The mother admitted that she had lived in seven different residences since the children entered foster care, and the case manager testified that the mother had failed to keep DFACS informed of her address changes. She had not voluntarily paid any child support, but her income tax refund had been intercepted by the Child Support Enforcement Unit and applied to her child support obligations. She had held two jobs after her children entered foster care; one lasted two months and the other five days. She was not employed at the time of the termination hearing.
The mother has been diagnosed with bipolar disorder and attention deficit disorder. She has been in some form of treatment for her mental health problems since 1985 and has been prescribed several medications, which she admittedly has failed to take consistently. She failed to complete the required psychological evaluation or the three-month residential treatment program at the New Hope Women's Center to which she was referred. That program was designed to help with her mental health and drug abuse problems. Instead, she completed a 28-day outpatient program at the Alcohol and Drug Addiction Center in June 2001. She had been asked to submit to drug testing seventeen times, but submitted to only fourteen of the tests, three of which were positive for marijuana and/or methamphetamines.
The mother has six children, none of whom are in her custody. She testified that she started using drugs at the age of four or five and continued to use methamphetamines and marijuana after the triplets were taken. She testified that she had last used methamphetamines in December 2001. She also reported that she had pled guilty to a charge of possession of methamphetamines in Tennessee and had been in jail three times since 1998. She was convicted of possession of marijuana and methamphetamines in Georgia and was incarcerated for a probation violation for two years, beginning in 1996. She further revealed that she had recently been arrested on charges of possession of a firearm and driving with a suspended license and without proof of insurance. Those charges were still pending at the time of the termination hearing.
The case manager testified that she did not think the children had "suffered by visiting, or by not visiting" with their mother and noted that the children had been in foster care most of their lives. She testified that although she never witnessed anything inappropriate during the mother's visits with the children, continued visitation would be detrimental to the children because it would provide false hope that the mother would be able to provide for them. She also testified that DFACS had an adoptive placement for the children if parental rights were terminated. DFACS and a citizens review panel recommended termination of the mother's parental rights.
The decision to terminate parental rights is a two-step process. First, pursuant to OCGA § 15-11-94(a), the court determines if there is clear and convincing evidence of parental misconduct or inability by finding that:
(i) [t]he child is a deprived child, as such term is defined in Code Section 15-11-2; (ii) [t]he lack of proper parental care or control by the parent in question is the cause of the child's status as deprived; (iii) [s]uch cause of deprivation is likely to continue or will not likely be remedied; and (iv) [t]he continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.[1]
Second, if the court finds clear and convincing evidence of parental misconduct or inability, the court then considers whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional and moral condition and needs of the child, including the need for a secure and stable home.[2] After considering all of these factors, the juvenile *187 court entered an order terminating the mother's parental rights.
On appeal from a juvenile court order terminating parental rights, we must review the evidence in the light most favorable to the court's order to determine if a rational trier of fact could have found clear and convincing evidence that the parental rights had been lost.[3] We do not weigh evidence or determine the credibility of witnesses; rather, we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met.[4]
1. The mother concedes that the triplets are deprived and that the lack of proper parental care or control is the cause of their deprivation. She claims that the evidence was insufficient to support the juvenile court's finding that the causes of the children's deprivation were likely to continue. She argues that she had some success in complying with her reunification plan and points to her testimony at the termination hearing that she was willing to enroll in the residential treatment program at the New Hope Women's Center if given another opportunity.
"Although past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue."[5] The mother made some efforts to address her drug problems, but demonstrated no prospect of providing financial support or a stable home for her children. She missed 10 of 36 possible visits with her children, failed to cooperate with DFACS personnel and continued to use drugs after completion of her treatment program. Based on the evidence presented, a rational trier of fact could have found clear and convincing evidence that the causes of the triplets' deprivation were likely to continue.[6]
2. The mother claims that the evidence was insufficient to support the juvenile court's finding that the children's continued deprivation was likely to cause them serious harm.
The juvenile court made specific findings that "the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the children"; that the children were suffering and were in danger of continuing to suffer serious harm "due to the mere continuance of the relationship with the [mother] on a visitation basis" and that continuation of the parental relationship "would serve as an impediment to the future development of the children and their physical, mental and emotional health." Although the juvenile court did not identify specific facts supporting those findings, the order does contain facts that support a conclusion that continued deprivation would cause serious physical, mental, emotional or moral harm to the children. The evidence of the mother's repeated failure to remain drug free and her failure to take the steps necessary to reunite with the triplets was sufficient to satisfy this requirement.[7]
3. The mother claims that termination of her parental rights is not in her children's best interests.
"The same factors showing the existence of parental misconduct or inability can support a finding that termination of parental rights would be in the child's best interest."[8] When considering the best interests of the children, the juvenile court may also consider the children's need for a stable and permanent home environment.[9] In light of these considerations, a rational trier of *188 fact could have found clear and convincing evidence that termination was in the best interests of the children.[10]
Judgment affirmed.
BLACKBURN, P.J., and ELLINGTON, J., concur.
NOTES
[1] OCGA § 15-11-94(b)(4)(A).
[2] OCGA § 15-11-94(a).
[3] In the Interest of N.J.W., 233 Ga.App. 130, 503 S.E.2d 366 (1998).
[4] Id.
[5] (Citation and punctuation omitted.) In the Interest of R.N., 224 Ga.App. 202, 204(1)(c), 480 S.E.2d 243 (1997).
[6] See In the Interest of J.H., 258 Ga.App. 211, 216, 573 S.E.2d 481 (2002); In the Interest of S.C.M.H., 238 Ga.App. 159, 162-163(2), 517 S.E.2d 598 (1999).
[7] See In the Interest of S.C.M.H., supra at 163, 517 S.E.2d 598.
[8] Id.
[9] In the Interest of J.O.L., 235 Ga.App. 856, 858, 510 S.E.2d 613 (1998).
[10] See id.; In the Interest of S.C.M.H., supra.