592 S.E.2d 441 (2003)
264 Ga. App. 777
In the Interest of B.I.F., a child.
No. A03A1752.
Court of Appeals of Georgia.
December 16, 2003.
*442 Rodney Q. Quarles, Chatsworth, TX, for appellant.
Thurbert E. Baker, Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Laura W. Hyman, Assistant Attorneys General, Atlanta, Cynthia N. Johnson, Dalton, for appellee.
JOHNSON, Presiding Judge.
This is an appeal from an order of the juvenile court terminating the mother's parental rights to B.I.F., her four-year-old son. The mother contends there was not clear and convincing evidence that the child's continued deprivation was likely to cause him serious harm or that termination of parental rights was in the child's best interest. We find no reversible error and affirm the juvenile court's order terminating the mother's parental rights.
The evidence presented at the parental rights termination hearing revealed the following: *443 In February 2001, the Murray County Department of Family and Children Services obtained custody of 20-month-old B.I.F. and his triplet half-brothers. The mother was abusing drugs, suffered from mental illness, and had missed a doctor's appointment for the fragile triplets. The mother consented to the entry of a deprivation order. B.I.F. was placed in his father's custody pursuant to a superior court custody order.
In October 2001, B.I.F. entered the Department's care for the second time when neighbors found him asleep on the front porch of his father's home. The child had been outside so long that he was sunburned. The child's father was inside the house, but was intoxicated and would not open the door until police arrived. B.I.F. was taken into protective custody. The mother's whereabouts were unknown.
Following a deprivation hearing in May 2002, the juvenile court found that B.I.F. was deprived and awarded temporary legal custody to the Department. The Department developed a reunification plan for the mother which required her to comply with the following goals: (1) maintain contact with B.I.F., (2) maintain an adequate living space, (3) pay child support, (4) improve her parenting skills, (5) address her mental health needs and her drug and alcohol problems, and (6) cooperate with the Department. In September 2002, the Department filed a petition to terminate the mother's parental rights to B.I.F. on the following grounds: her parental rights to the triplets had been terminated, she had failed to comply with reunification plans and had failed to support B.I.F., she had an extensive criminal history and currently was incarcerated, and she had failed to address her mental health and substance abuse problems.
The juvenile court held its first termination hearing in December 2002. However, because of some technical issues, a new termination hearing was held on February 4, 2003. The juvenile court considered evidence that the mother did not have custody of any of her six children and took judicial notice of its filed orders regarding the mother and her other children. According to the evidence, the mother's oldest child was removed from her custody when she was seven years old because of the mother's drug problems and was placed in her father's custody; she lived with her paternal grandparents. Her second child was in his maternal grandmother's custody, where he had lived for most of his life. In addition, the Department noted that the mother's parental rights to the triplets had been terminated.[1]
The mother testified about her extensive criminal history. She was arrested and convicted of possession of methamphetamine and marijuana in 1996 and served 15 months in prison. She was also convicted of felony possession of methamphetamine two years before the termination hearing. She was placed on probation and ordered to pay a fine. She also acknowledged she had been arrested for driving with a suspended license twice during the previous year and had been arrested in June 2002 for theft by taking, theft by receiving, and forgery. At the time of her arrest in June, the mother also had outstanding charges for possession of methamphetamine and possession of a firearm by a felon. She pled guilty to all charges and was sentenced to 12 months in jail.
The mother further testified that she started using drugs at the age of five or six and developed a serious drug problem by the age of thirteen. On January 30, 2003, two weeks after her release from jail, the mother moved into an inpatient substance abuse treatment facility. This was her first time in a substance abuse treatment program.
The mother has been diagnosed with bipolar disorder and attention deficit disorder. She has been in some form of treatment for her mental health problems since 1985 and has been prescribed several medications, which she admittedly has failed to take consistently.
The mother confirmed that she was unemployed, admitting, "I haven't worked much." She also admitted that she had not visited B.I.F. since April 2002, despite the fact that *444 she was not incarcerated until the end of June 2002. She also recounted that she had paid no child support until four days before the February 2003 hearing, at which time she paid $15.
The caseworker testified that the mother rescheduled an appointment to review the final case plan and then failed to show up at the appointment. The caseworker went into detail about the mother's failure to comply with her case plan goals. According to the caseworker, the mother failed to visit B.I.F., failed to resolve her drug and alcohol problems, failed to obtain a stable home, failed to enroll in parenting classes, and failed to pay child support. When asked about her future housing, the mother replied that she would live "wherever God gives me." The caseworker told the court that B.I.F. had resided with his paternal grandfather since May 2002 and was doing well. The caseworker concluded that based on the mother's history with the Department and her conduct toward her six children, she has failed to demonstrate an ability to keep the children safe or adequately nurture them. He recommended termination of the mother's parental rights. B.I.F.'s guardian ad litem also recommended terminating the mother's parental rights. The juvenile court entered an order terminating the mother's parental rights to B.I.F.
In reviewing a juvenile court's decision to terminate parental rights, we view the evidence in the light most favorable to the juvenile court's disposition and determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody should be terminated.[2] In so doing, we do not weigh the evidence or determine the credibility of witnesses; rather, we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met.[3]
A termination of parental rights case involves a two-step analysis. First, there must be a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child.[4] If these four factors exist, then the court must determine whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home.[5]
1. Here, the mother does not contest the court's finding that the child is deprived, that the lack of parental care is the cause of the deprivation, or that the deprivation will continue. The mother merely contends that the evidence was insufficient to show that B.I.F.'s continued deprivation is likely to cause him serious harm. We find that the evidence supports the juvenile court's findings.
The juvenile court made specific findings that "the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child"; that the child "has suffered, is suffering, and will continue to suffer in the future as a result of the profoundly detrimental and egregious conduct of said mother"; that the child is currently suffering and is in danger of suffering serious harm in the future "due to the mere continuance of the relationship with the mother on a visitation basis"; and that continuation of the parental relationship "would serve as an impediment to the future development of the child and his physical, mental and emotional health." Although the juvenile court did not identify specific facts supporting those findings, the order does contain facts that support a conclusion that continued deprivation would cause serious physical, mental, emotional, or moral harm to the child.
The same circumstances that authorized the juvenile court's determination that *445 B.I.F. was deprived due to lack of proper parental control or to parental inability and that such deprivation was likely to continue further provided clear and convincing evidentiary support for the conclusion that such continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.[6] Here, evidence of the mother's repeated failure to remain drug free and her failure to take the steps necessary to reunite with B.I.F. was sufficient to satisfy this requirement.[7] The present facts clearly demonstrate that the mother failed to complete the Department's reunification plan and that her parenting skills have been severely impaired by recurring drug and psychological problems. The mother failed to obtain housing or employment. In addition, the mother failed to maintain any relationship with B.I.F.
In addition, it is well established that children need permanence of home and emotional stability or they are likely to suffer serious emotional problems.[8] A caseworker's testimony about the need for permanency may be considered by the juvenile court. Here, the juvenile court's conclusion that B.I.F.'s continued deprivation is likely to cause him serious harm is supported by the record.
2. The mother also contends that termination of her parental rights is not in B.I.F.'s best interest. However, the same factors showing the existence of parental misconduct or inability can support a finding that termination of parental rights would be in the child's best interest.[9] And, when considering the best interest of the child, the juvenile court may also consider the child's need for a stable and permanent home environment.[10] In light of these considerations, a rational trier of fact could have found clear and convincing evidence that termination of the mother's parental rights was in B.I.F.'s best interest.[11]
Judgment affirmed.
ELDRIDGE and MIKELL, JJ., concur.
NOTES
[1] This Court recently affirmed termination of the mother's parental rights to the triplets in In the Interest of J.A.R.S., 262 Ga.App. 237, 585 S.E.2d 184 (2003).
[2] In the Interest of N.L., 260 Ga.App. 830, 581 S.E.2d 643 (2003).
[3] Id.
[4] OCGA § 15-11-94(b)(4)(A)(i)-(iv).
[5] OCGA § 15-11-94(a).
[6] See In the Interest of K.S.W., 233 Ga.App. 144, 149(3), 503 S.E.2d 376 (1998).
[7] See In the Interest of J.A.R.S., supra at 240(2), 585 S.E.2d 184.
[8] See In the Interest of R.A.R., 259 Ga.App. 680, 686-687(3), 577 S.E.2d 872 (2003); In the Interest of M.C.L., 251 Ga.App. 132, 136(1)(b), 553 S.E.2d 647 (2001).
[9] See In the Interest of S.C.M.H., 238 Ga.App. 159, 163(2), 517 S.E.2d 598 (1999).
[10] See In the Interest of J.O.L., 235 Ga.App. 856, 858, 510 S.E.2d 613 (1998).
[11] See In the Interest of J.A.R.S., supra at 240(3), 585 S.E.2d 184.