649 S.E.2d 882 (2007)
In the Interest of J.A., a child.
No. A07A0975.
Court of Appeals of Georgia.
July 20, 2007.
*883 Franklin D. McCrea, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, John D. Staggs Jr., for appellee.
ELLINGTON, Judge.
The Juvenile Court of Bacon County terminated the parental rights of the mother and father of four-year-old J.A.[1] The father appeals, challenging the sufficiency of the evidence. Finding no error, we affirm.
The Georgia Code sets forth a two-step process to be used in termination of parental rights cases. First, the trial court determines "whether there is present clear and convincing evidence of parental misconduct or inability." OCGA § 15-11-94(a). Four factors must be present to establish parental misconduct or inability: (1) the child must be deprived, that is, "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals";[2] (2) the lack of proper parental care or control by the parent in question must cause the deprivation; (3) the cause of the deprivation must be likely to continue; and (4) continued deprivation must be likely to cause the child serious physical, mental, emotional, or moral harm. OCGA § 15-11-94(b)(4)(A)(i)-(iv). If the trial court finds that these four factors exist, then the court determines whether termination of parental rights is in the best interest of the child, "after considering the physical, mental, emotional, and moral condition and needs of the child . . ., including the need for a secure and stable home." OCGA § 15-11-94(a).
On appeal from an order terminating parental rights,
we must determine whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met.
(Citation and footnote omitted.) In the Interest of C.R.G., 272 Ga.App. 161, 161-162, 611 S.E.2d 784 (2005). "In determining the balance of the interests of the children against parental rights, the juvenile court is vested with broad discretion which will not be controlled on appeal in the absence of manifest abuse, where the ruling is supported by clear and convincing evidence." (Citations omitted.) In the Interest of W.J.J., 176 Ga.App. 824, 826, 338 S.E.2d 54 (1985).
Viewed in the light most favorable to the juvenile court's judgment, the record shows the following. In December 2003, a few months after J.A.'s mother and father separated, the mother entered a residential mental health treatment facility. Before entering the facility, the mother asked the Georgia Department of Human Resources by and through the Bacon County Department of Family and Children Services ("the Department") to take custody of her children, eleven-year-old T.W. and one-year-old J.A., because she could not care for them due to her mental health problems. After a hearing, *884 the juvenile court placed temporary custody with the Department after finding that J.A.'s father was living with his own mother and numerous other family members, had been unemployed for three months, was on probation for two burglary convictions, and had used marijuana within the previous three weeks. The father's first reunification case plan, which he signed on January 13, 2004 and which the court ordered him to complete, required him within six months to obtain a source of income, obtain suitable housing for the family, complete parenting classes, obtain a substance abuse assessment and follow treatment recommendations, and submit to random drug screens and test negative for drugs for six consecutive months. Subsequent case plans continued these goals and additionally required the father to provide financial support through Child Support Enforcement.
J.A.'s mother and father stipulated that the child was deprived at hearings on February 12, 2004, and December 3, 2004. During the nearly three years leading up to the hearing on the petition to terminate parental rights, the trial court continued to find that the child was deprived based on evidence that the father failed to maintain steady employment, failed to pay required child support, failed to establish a residence separate from his own mother, and failed to maintain six months of negative drugs screens. The father admitted in several review hearings that he had failed to complete recommended drug treatment and that he continued to use marijuana.
At the hearing on the petition to terminate the parents' rights, held on November 11, 2006, the court received evidence that the father was in jail pending charges for an aggravated assault on an 86-year-old woman. The father admitted that he was over $700 in arrears on his child support obligation. He also admitted that he had a substance abuse problem and that he had never completed drug treatment. In addition, the evidence showed that the father had failed several drug screens and had refused to submit to some others. The father admitted that he had not been doing what he was required to do for his child and offered no explanation as to why over the course of three years he had not taken the steps necessary to be reunited with his child.
The juvenile court determined that J.A. is a deprived child based on five statutorily authorized considerations: (a) medically verifiable deficiencies of the mother's mental health of such duration or nature as to render the mother unable to provide adequately for the of the child;[3] (b) the father's excessive use of or history of chronic unrehabilitated abuse of controlled substances which has rendered him incapable of providing adequately for the needs of the child;[4] (c) the parents' significant failure without justifiable cause for the year preceding the filing of the petition for termination of parental rights to develop and maintain a parental bond with the child in a meaningful, supportive manner;[5] (d) the parents' significant failure without justifiable cause for the year preceding the filing of the petition for termination of parental rights to provide for the care and support of the child as required by law;[6] (e) the parents' significant failure without justifiable cause for the year preceding the filing of the petition for termination of parental rights to comply with a court-ordered plan designed to reunite the child with the parents.[7]
On appeal, the father concedes that clear and convincing proof established that J.A. is deprived and that his lack of proper parental care and control caused her deprivation, the first and second factor. The father contends, however, that the Department failed to prove that J.A.'s deprivation is likely to continue or that continued deprivation is likely to harm the child. The father argued that the evidence at the termination hearing was "conclusory, mainly based on hearsay, and contradictory," "sketchy," and "cursory."
*885 The record shows that the details of the father's misconduct and parental failures during the first two years J.A. spent in foster care were established during hearings and case reviews which formed the basis of several deprivation orders, which the father never appealed or contradicted. At the termination hearing, the juvenile court focused on whether the father had "done anything specific" in the year between the last deprivation hearing and the termination hearing. The trial court properly considered facts judicially established during the previous deprivation proceedings.[8] And the undisputed evidence established that during the third year the child spent in foster care the father made no progress toward meeting the reunification plan goals; rather, the father came to the hearing on the petition to terminate his parental rights with no home to offer his child, no means of supporting his child, and an unrehabilitated drug problem. The father's failure for three years to take the steps necessary to be reunited with his child provided clear and convincing evidence that the deprivation was likely to continue. In the Interest of M.N.R., 282 Ga.App. 46, 47, 637 S.E.2d 777 (2006) (juvenile court's finding that deprivation was likely to continue was supported by clear and convincing evidence where the mother failed to complete drug treatment program required by her plan, relapsed after she completed an earlier program, tested positive for drugs about a month before the termination hearing, and failed to visit and bond with the child and to meet the other goals of her reunification plan); In the Interest of L.W., 276 Ga.App. 197, 200(1), 622 S.E.2d 860 (2005) (juvenile court's finding that deprivation was likely to continue was supported by clear and convincing evidence where the mother failed to resolve her longstanding problems with drug addiction and to fulfill the other provisions in her case plan).
As for the fourth factor, that continued deprivation is likely to harm the child, we have held that "it is a fair inference that use of controlled substances by a parent has an adverse effect on a minor child." (Punctuation and footnote omitted.) In the Interest of T.L., 279 Ga.App. 7, 12(1), 630 S.E.2d 154 (2006). In addition, J.A.'s caseworker testified regarding the child's need for stability and permanency. As we have held, "it is well established that children need permanence of home and emotional stability or they are likely to suffer serious emotional problems." (Footnote omitted.) In the Interest of B.I.F., 264 Ga.App. 777, 781(1), 592 S.E.2d 441 (2003). In light of the child's need for a secure and stable home, evidence of the father's continued failure to seek drug treatment and end his drug use and of his failure to take the steps necessary to reunite with the child, detailed above, is sufficient clear and convincing evidence to support the juvenile court's conclusion that the child is likely to suffer harm if the father's parental rights are not terminated and the status quo is allowed to continue indefinitely. In the Interest of D.L.T., 283 Ga.App. 223, 229(2), 641 S.E.2d 236 (2007); In the Interest of M.N.R., 282 Ga.App. at 48, 637 S.E.2d 777; In the Interest of T.L., 279 Ga.App. at 16-17(5), 630 S.E.2d 154; In the Interest of L.W., 276 Ga.App. at 198-200(1), 622 S.E.2d 860; In the Interest of A.B., 274 Ga.App. 230, 232, 617 S.E.2d 189 (2005); In the Interest of B.I.F., 264 Ga.App. at 780-781(1), 592 S.E.2d 441.
Finally, the evidence was sufficient to establish the second prong, that termination of parental rights is in the best interest of the child.[9] In light of the fact that at the time of the hearing the child had spent three of her four years of life in foster care, the same evidence of the father's failure to establish a suitable home and a stable income, failure to become drug free, and failure to comply with his reunification plan goals is sufficient to support the juvenile court's finding that termination of the father's parental rights is in the child's best interest. In the *886 Interest of A.B., 274 Ga.App. at 233, 617 S.E.2d 189; In the Interest of S.G., 271 Ga. App. 776, 781, 611 S.E.2d 86 (2005); In the Interest of B.I.F., 264 Ga.App. at 781(2), 592 S.E.2d 441. The father has identified nothing in the record that warrants any reasonable hope of future parental fitness. In the Interest of C.D.P., 238 Ga.App. 393, 395, 519 S.E.2d 37 (1999).
Given the juvenile's courts findings, which we have determined to be supported by clear and convincing evidence, the court did not abuse its discretion in terminating the father's parental rights. Accordingly, we affirm.
Judgment affirmed.
ANDREWS, P.J., and ADAMS, J., concur.
NOTES
[1] The appealed order also terminated the rights of the parents of J.A.'s older half-brother, T.W. The mother and T.W.'s putative father did not appeal the order.
[2] OCGA § 15-11-2(8)(A) (definition of a deprived child).
[3] OCGA § 15-11-94(b)(4)(B)(i).
[4] OCGA § 15-11-94(b)(4)(B)(ii).
[5] OCGA § 15-11-94(b)(4)(C)(i).
[6] OCGA § 15-11-94(b)(4)(C)(ii).
[7] OCGA § 15-11-94(b)(4)(C)(iii).
[8] See In the Interest of R.C.M., 284 Ga.App. 791,798, n. 6, 645 S.E.2d 363 (2007) ("[W]here the Department shows that the conditions upon which an earlier finding of deprivation was based still exist at the time of the hearing on the termination petition, the fact that the parent did not appeal the earlier deprivation order will preclude the parent from challenging the allegation of current deprivation.") (citations omitted).
[9] OCGA § 15-11-94(a).