671 S.E.2d 909 (2009)
In the Interest of A.D. et al., children.
No. A08A1864.
Court of Appeals of Georgia.
January 6, 2009.
*910 Jeffrey W. Duncan, Tallapoosa, for appellant.
Thurbert E. Baker, Atty. Gen., Shalen S. Nelson, Senior Asst. Atty. Gen., Kathryn A. Fox, Asst. Atty. Gen., T. Michael Flinn, Carrollton, for appellees.
JOHNSON, Presiding Judge.
Following the termination of her parental rights to A.D. and J.R., the children's natural mother appeals, contending that the evidence was insufficient to support the juvenile court's ruling. For the reasons set forth below, we affirm.
On appeal from a judgment terminating parental rights, we must review the evidence in a light most favorable to the juvenile court's ruling and determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights should have been terminated.[1] In so doing, this Court neither weighs the evidence nor determines the credibility of witnesses; rather, we defer to the juvenile court's findings of fact and affirm unless the appellate standard is not met.[2]
So viewed, the record shows that the mother began receiving services from the Carroll County Department of Family and Children Services (the "Department") shortly after A.D. was born in 1999. The mother gave birth to three more children over the next three years: I.D., who was born in 2000, J.R., who was born in 2001, and G.D., who was born in 2002. Each of the children was born out of wedlock to a different natural father, and the fathers of A.D., J.R., and G.D. never legitimated or supported them.
On March 30, 2005, the juvenile court authorized shelter care for the children after the mother admitted she could not meet their basic needs and requested that the Department have custody until she could "get her life together." In April 2005, the juvenile court found probable cause to believe that the children were deprived based on the mother's inability to care for them. Custody of I.D. was awarded to his natural father, and A.D., J.R. and G.D. remained in foster care.
*911 In May 2006, the juvenile court approved a trial placement in which A.D. and J.R. were to live with the mother. During the trial placement, the mother called on the foster parents of A.D. and J.R. to keep the children almost every, if not every, weekend; she was evicted from her home; and she and the children moved in with the children's grandmother, whom the mother had previously accused of striking her. On July 12, 2006, approximately 42 days after the trial placement began, the mother asked A.D.'s foster mother (who is now also the foster mother of J.R.) to pick up the children because she was scared to be alone with them. Both children have remained in the foster parents' home since that time.
In June 2007, the juvenile court found A.D., J.R., and G.D. to be deprived. The Department filed a petition to terminate the parental rights of both the mother and the natural fathers of each of the children, which was supported by the children's guardian ad litem. On January 16, 2008, the juvenile court terminated the parental rights as to A.D. and J.R., finding that the mother failed to meet any of the mental health goals in her reunification plan, was unable to maintain stable housing, and repeatedly involved herself with men that subjected her to domestic violence in the home.[3]
The mother appeals, contending that there was insufficient clear and convincing evidence to support a finding that the continued deprivation of A.D. and J.R. was likely to result in serious harm to them, as required by OCGA § 15-11-94(b)(4)(A)(iv). We disagree.
Evidence was presented showing that after the brief "trial placement" with the mother in 2006, the children had regressed to a point at which they were no longer able to spell their names or recite the alphabet, and the mother had failed to provide A.D. with her prescribed medication for ADHD. While the mother claims that this evidence of specific harm should be discounted because it came from the foster mother, it is the role of the trial court, not this Court, to assess the credibility of witnesses.[4]
In addition, the juvenile court heard evidence that the mother failed to take the steps necessary for reunification with A.D. and J.R., that the foster parents have provided A.D. and J.R. with a stable and secure home, and that the foster parents want to adopt them. This evidence also supports the juvenile court's determination that A.D. and J.R. would be harmed by further deprivation.[5] As a result, we find that there is sufficient clear and convincing evidence to support the juvenile court's conclusion that A.D. and J.R. are likely to suffer serious harm if the mother's parental rights are not terminated.[6]
Judgment affirmed.
BARNES and PHIPPS, JJ., concur.
NOTES
[1] In the Interest of T.L., 279 Ga.App. 7, 10, 630 S.E.2d 154 (2006).
[2] Id.
[3] The mother's parental rights to G.D. are not at issue in this appeal.
[4] Id.
[5] In the Interest of C.J., 279 Ga.App. 213, 217-218(1), 630 S.E.2d 836 (2006); see also In the Interest of B.I.F., 264 Ga.App. 777, 781(1), 592 S.E.2d 441 (2003) ("it is well established that children need permanence of home and emotional stability or they are likely to suffer serious emotional problems") (footnote omitted).
[6] See In the Interest of D.L.T., 283 Ga.App. 223, 228-229(2), 641 S.E.2d 236 (2007).