**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**August 20, 2019**

# In the Court of Appeals of Georgia

A19A0969. IN THE INTEREST OF C. A. B., a child.

RICKMAN, Judge.

In this, her second appeal to this Court,[1] the mother of C. A. B. appeals the termination of her parental rights to the child, arguing that the evidence was insufficient to support the result. For the reasons that follow, we affirm.

> On appeal from an order terminating parental rights, we review the evidence in the light most favorable to the juvenile court's judgment in order to determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. We neither weigh evidence nor determine witness credibility, but defer to the juvenile court's findings of fact and affirm unless the appellate standard is not met.

---

[1] See *In the Interest of C. A. B.*, (Case No. A18A0950, decided August 2, 2018) (unpublished).

(Citation and punctuation omitted.) *In re U. G.*, 291 Ga. App. 404, 404 (662 SE2d 190) (2008).

Here, the record[2] and the evidence presented at the termination hearing reflect that C. A. B. was born in Georgia on February 22, 2016, and that, at the time of his birth, both the child and his mother tested positive for cocaine. After his birth, C. A. B. suffered from withdrawal symptoms such as shaking, sucking, respiration issues, and poor sleep after feeding. The Whitfield County Department of Family and Children Services ("DFACS") removed C. A. B. from his mother's custody two days after birth. The juvenile court placed the child in foster care and, in April 2016, found that he was dependent as a result of his parents'[3] substance abuse, which finding has not been appealed.

DFACS established a reunification case plan for the parents. The case plan required the parents (1) to obtain and maintain stable housing and income; (2) to complete a DFACS-sanctioned parenting class; (3) to pay child support; (4) to take

---

[2] At the termination hearing, the trial court took judicial notice of the entire record, including "all previous unappealed Findings of Fact and Conclusions of Law." See *In re R. J. D. B.*, 305 Ga. App. 888, 898 (4) (b) (700 SE2d 898) (2010) ("It is well settled that a court may take judicial notice of records in the same court." (citation and punctuation omitted)).

[3] C. A. B.'s father died in July 2017.

psychological evaluations and follow the resulting recommendations; (5) to complete drug treatment programs; (6) to cooperate and communicate with DFACS; (7) to attend visits regularly with the child; and (8) to obtain approved hair follicle drug tests or a drug screens as requested. The court itself ordered the parents to pay child support, attend weekly supervised visits, and undergo substance abuse treatment and random drug screens.

In May 2016, the juvenile court conducted a case plan review, judicial review, and permanency planning hearing. As a result, the court found by clear and convincing evidence that DFACS had reviewed the case plan goals with the parents; that the mother was asked to take a hair follicle drug screen but failed to do so; that the child continued to be dependent; that the mother was required to pay $65 per week in child support "beginning immediately"; and that the mother was notified that failure to pay support for a period of six months or more may result in termination of parental rights. In June 2016, the mother tested positive for cocaine in a hair follicle test.

A citizen panel review was conducted in September 2016, but the parents failed to attend; the mother explained that she and the father were too tired because the mother was again pregnant and the father had just been released from jail. Based on

the panel's findings, the court found that, although the parents had visited the child, the parents had not complied with the recommendations from their psychological evaluations, had not complied with requested hair follicle drug tests, and were not paying child support. This order was not appealed.

In November, 2016, following a permanency hearing, the juvenile court found that the mother had failed to provide random drug screen results, had refused to be screened by an approved provider, and had provided no proof of completion of any case plan goals other than visitation. The court ordered that the parents schedule a hair follicle drug test with DFACS as soon as possible following the hearing and to provide any and all proof of completion of any case plan goals immediately.

Later that month, the court conducted another review, which the parents attended. The court found that the parents had submitted proof of adequate housing but proof of only one week of income in the past four months; that the parents had failed to provide adequate proof that they had completed parenting training; that the parents had repeatedly refused to obtain random drug screens from acceptable labs; that they specifically failed to submit proof that they took a court-ordered drug screen on November 2, 2016; that the mother tested positive for cocaine in June 2016; and

that the parents had not submitted proof of drug or alcohol treatment enrollment or completion. The court concluded:

> As of this date, the court does not have proof of income, proof of dates of employment, proof of alcohol and drug treatment completion, proof of child support payments or proof of completion of treatment recommended by the psychological evaluations from someone proven to be competent to offer that treatment.

The parents did not appeal from this order. In a drug screen that had been pending at the time of the court's order, the mother again tested positive for cocaine.

Based on a citizen panel review in March 2017, the juvenile court found that the parents had "failed to appear for any screens or to provide screens when ordered in court," and that after being given an additional opportunity to submit proof of an appropriate screen, the parents failed to do so. In April 2017, DFACS petitioned to terminate parental rights in both parents. Following a May 2017 permanency hearing, at which the parents failed to appear despite proper notice, the juvenile court found by clear and convincing evidence "that the parents had made no progress toward completion of their case plan goals since the last panel review." And in June 2017, the mother again tested positive for cocaine.

Two months later, at the termination hearing, the mother admitted that in March 2017, she did "two lines" of cocaine three days before she went into labor with another child, who was removed from the mother by the state of Tennessee due to testing positive for cocaine. She admitted that she had no proof that she had made any child support payments. And she admitted that she had not worked "a lot" during the 18 months that she had been pregnant with C. A. B. and her younger child. The DFACS case manager testified and confirmed many of the facts already established at the earlier hearings about C. A. B.'s birth, the mother's failure to comply with the case plan and to cooperate with DFACS, and the mother's failure to take numerous requested random drug screens.

At the end of the hearing, the mother requested that the court keep the record open so that she could submit proof of child support payments, her medical prescriptions, drug screens she had taken in Chattanooga, and a letter from her older daughter. DFACS objected to any drug screen evidence based on screens that were not random, not a "nine panel" test, and not sanctioned by the court. DFACS asked to submit certified copies of the mother's criminal record from various states. The mother objected to any such evidence that was not relevant in time. The court agreed to leave the record open for ten days for these items and for the written

6

recommendation of the guardian ad litem. Following the mother's post-hearing submission, DFACS again objected to the drug screen evidence on the ground that the mother had provided no proof that the screens were the result of random screening.

The mother's post-hearing submission did not include any evidence to show that she had made child support payments. Although the mother submitted multiple drug screen reports, she did not submit proof that the screens were random or that they met the criteria for drug testing set by the trial court or DFACS. The mother further submitted a letter from a physician, dated April 2017, in which he opined that she would make a good mother if she remained "sober and compliant with treatment." The letter referenced the mother's recent delivery in Tennessee, but the letter was apparently written without knowledge that the state removed the child due to testing positive for cocaine. The letter was also written before the mother's June 2017 drug screen where she tested positive for cocaine. DFACS submitted certified copies of the mother's lengthy criminal history for offenses that occurred between 2008 to 2014.

Ultimately, the trial court terminated the mother's parental rights, and the mother filed an application for discretionary review, which this Court granted. On appeal, this Court affirmed in part and vacated and remanded in part. See *In the*

*Interest of C. A. B.*, (Case No. A18A0950, decided August 2, 2018) (unpublished). This Court affirmed the trial court's decision in refusing to grant a second continuance prior to the August 2017 termination hearing. This Court found, however, that the trial court erred in terminating the mother's parental rights for two reasons: (1) the trial court misstated the law, finding that the mother failed to comply with the child support order for six months or longer, whereas OCGA § 15-11-310 (a) (3) requires wanton and willful failure to comply for 12 months or longer; and (2) the trial court merely recited the criteria for terminating parental rights, without making specific finding as to how the law applied to the facts at hand.

In August 2018, the juvenile court issued an amended order terminating the mother's parental rights and correcting the earlier order's shortcomings. The court found that the mother wantonly and willfully failed to comply for a period of twelve months or longer with the court's child support decree under OCGA § 15-11-310 (a) (3). The court found that the mother paid no support for the child in the seventeen months the child was in DFACS's custody, even though the mother admitted employment and that she was capable of paying support.

The trial court also found grounds to terminate the mother's rights under OCGA § 15-11-310 (a) (4), abandonment. The trial court noted that the mother

refused to participate in the reunification plan, failed to complete any case plan goal with the exception of visiting the child, and was often late to the visits she did attend.

The trial court further found grounds to terminate the mother's rights under OCGA § 15-11-310 (a) (5), dependency. The court found that the mother failed to address her substance abuse that led to the removal of C. A. B. at birth and the removal of her later child born in Tennessee. The court noted that the mother continued to test positive for cocaine and refused to submit to most of DFACS's requested drug screens. The court also found that the mother refused to pay for child support. The court found that reasonable efforts by DFACS to remedy the circumstances were unsuccessful. DFACS repeatedly informed the mother of what was required to regain custody and offered its services free of charge, yet the mother refused to take advantage of those services, failed to even start parenting classes, and repeatedly refused drug screens and drug treatment. The trial court found that the dependency was likely to continue given the mother's lengthy criminal history, her documented history of drug dependence which led to frequent arrests, her lack of housing and employment stability, and her having given birth to a subsequent child who was also removed for drug use.

Finally, the trial court found that termination of parental rights was in the best interest of the child. The child was securely attached to his foster parents, who were anxious to adopt. The trial court also found that the child's need for permanency was met by termination of the mother's rights and placement for adoption with the current foster family; the mother was unable to provide a safe environment for the child; the home environment of the mother was lacking stability; the mother had a long history of drug dependence; and there was a likelihood of severe emotional damage if the child was removed from his foster parents. The court also noted that the child's guardian ad litem and special advocate both recommended termination. Accordingly, the trial court terminated the mother's parental rights. This Court granted the mother's application for discretionary appeal.

1. The mother's argument that the trial court abused its discretion in denying her request for a continuance is barred by the law of the case because the issue was addressed in the earlier appeal to this Court. See OCGA § 9-11-60 (h); *Langlands v. State*, 282 Ga. 103, 104 (2) (646 SE2d 253) (2007).

2. Together with the trial court's unappealed interlocutory findings and the full record, of which the court took judicial notice, the evidence presented at the

10

termination hearing was sufficient to support the juvenile court's termination of the mother's parental rights under the standard given above.

The decision to terminate parental rights is a two-step process. The court must first determine whether any of five statutory grounds have been met, including the three grounds upon which the court relied in this case: (1) the parent failed to comply with a child support order for more than twelve months; (2) the parent abandoned the child; or (3) the child is considered dependent due to a lack of proper care or control by the parent and other statutory considerations are present. See OCGA § 15-11-310 (a). "These grounds are independent, and thus, on appeal, if there is sufficient evidence supporting any one of these grounds, we need not consider the other grounds in order to affirm." *In Interest of E. M.*, 347 Ga. App. 351, 356 (2) (a) (819 SE2d 505) (2018). If one of the above grounds has been established, the juvenile court shall then consider whether termination of parental rights is in the child's best interest. See OCGA § 15-11-310 (b).

(a) First, the only evidence presented by the mother that she (or her husband) had paid any child support was her uncorroborated testimony that she paid $600. And despite numerous opportunities to present support for such a payment and the mother's testimony that she was employed, the mother failed to tender any supporting

11

evidence, including following the termination hearing. Yet the mother testified that she had a job during at least part of the relevant time. Thus, the trial court was authorized to conclude that the mother wantonly and willfully failed to comply for a period of twelve months or longer with the court's child support decree. See OCGA § 15-11-310 (a) (3); *In Interest of E. M.*, 347 Ga. App. at 357 (2) (a).

(b) Sufficient evidence was also presented to support the trial court's independent conclusion that the child was dependent due to lack of proper parental care or control by his or her parent (a finding that was not appealed), that reasonable efforts to remedy the circumstances had been unsuccessful, that the cause of dependency was likely to continue or would not likely be remedied, and that the continued dependency would cause or was likely to cause serious physical, mental, emotional, or moral harm to the child. See former OCGA § 15-11-310 (a) (5).[4]

Evidence was presented about the mother's continued use of cocaine, which had affected two of her children at birth, as well as her failure to cooperate with DFACS on drug testing, to verify taking appropriate drug treatment, to comply with the case plan, and to pay support. Evidence was also presented to show that DFACS had repeatedly instructed the mother regarding the requirements of the case plan but

---

[4] The statute was amended in 2018. See Ga. L. 2018, p. 935, § 3.

12

that she had failed to comply and failed to show up at numerous proceedings. Also, the mother's repeated and continued use of cocaine supported the trial court's conclusion that the cause of the dependency was not likely to be remedied. And the case manager testified that continued contact with the mother would be harmful to C. A. B. See *In the Interest of B. I. F.*, 264 Ga. App. 777, 779 (592 SE2d 441) (2003) (termination upheld in part because the evidence showed that "mother failed to visit [the child], failed to resolve her drug and alcohol problems, failed to obtain a stable home, failed to enroll in parenting classes, . . . failed to pay child support. . . and failed to demonstrate an ability to keep the children safe or adequately nurture them").

(c) Finally, the collective evidence provided a sufficient basis for the court to conclude that termination of the mother's rights was in the best interests of the child. See *B. I. F.*, 264 Ga. App. at 780 (2) ("[T]he same factors showing the existence of parental misconduct or inability can support a finding that termination of parental rights would be in the child's best interest."); see also OCGA § 15-11-310 (b) (2013) (factors the trial court shall consider, including the child's sense of attachments, the child's need for permanence and stability); OCGA § 15-11-26 (additional factors). Despite having lost custody of two children as a result of her use of cocaine, the

mother tested positive for cocaine less than two months prior to the termination hearing. The case manager testified that C. A. B. was thriving in foster care and bonded with the foster parents, that the mother was unstable, that it was critical to C. A. B's life that he have a safe, secure, and stable home, and that, in her professional opinion, continued contact with the mother would be harmful to the child. Further, the mother had tested positive for cocaine three times spanning almost the child's entire life as of the time of the termination hearing, when C. A. B. was 18 months old.

In sum, we find no error in the juvenile court's conclusion that clear and convincing evidence was presented that the mother's parental rights to C. A. B. were lost.

*Judgment affirmed. Miller, P. J., and Hodges, J., concur*.